John J. DeMARINES and Doris A. DeMarines, husband and wife,

v.

KLM ROYAL DUTCH AIRLINES, Appellant.

No. 77–2036.

United States Court of Appeals, Third Circuit.

Argued March 31, 1978.

Decided July 17, 1978.

Stephen J. Fearon, Lawrence Mentz, Condon & Forsyth, New York City, H. Wallace Roberts, Krusen, Evans & Byrne, Philadelphia, Pa., for appellant.

James E. Beasley, Jeffrey M. Stopford, Beasley, Hewson, Casey, Colleran & Stopford, Philadelphia, Pa., for appellees.

Before ADAMS, VAN DUSEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

This appeal arises from a diversity action for personal injuries and loss of consortium sustained by plaintiffs, Attorney and Mrs. John DeMarines, as a result of an alleged accident aboard an aircraft operated by defendant KLM Royal Dutch Airlines ("KLM") on an international flight. DeMarines and his wife boarded the KLM flight, chartered by the Pennsylvania Bar Association, in Pittsburgh, Pennsylvania, the point of origin, on May 12, 1972. The plane stopped briefly in Philadelphia, Pennsylvania, to receive another group of passengers and then flew to Europe; this flight was uneventful. The return flight left Zurich, Switzerland, on May 20, 1972, bound for Amsterdam, The Netherlands; after a short stopover, the plane continued to Philadelphia. It was on the Zurich-to-Amsterdam leg that the alleged accident occurred.

DeMarines testified that some time during the flight to Amsterdam he suffered an explosion-like pressure within his head. As a result, his speech became garbled and he experienced a "stoned, completely numb feeling" inside his head. Later that day he claims to have experienced a loss of equilibrium which has continued to the present.

Plaintiffs commenced this action on March 18, 1974.[1] The case was tried to a jury on the bifurcated issue of whether, for the purpose of liability under the Warsaw Convention,[2] an "accident" occurred. A mistrial was declared on April 16, 1976, because of a hung jury.

On October 5, 1976, a second trial on all the issues began, plaintiff[3] advancing the theory that he sustained an injury proximately caused by an accident in connection with the pressurization of the aircraft. After a ten-day trial, the jury returned a verdict in favor of Mr. DeMarines in the amount of $1,000,000 and in favor of Mrs. DeMarines in the amount of $50,000. Subsequently, KLM filed post-trial motions for judgment notwithstanding the verdict ("n. o. v.") or in the alternative, for a new trial, arguing that plaintiff presented insufficient evidence from which the jury could infer the occurrence of an "accident" and that the district court made several erroneous rulings during the course of the trial. The district court denied both motions. *DeMarines v. KLM Royal Dutch Airlines*, 433 F.Supp. 1047 (E.D.Pa.1977). We affirm the denial of the motion for judgment n. o. v. but remand for a new trial.[4]

---

1. In March 1973 DeMarines first wrote a claim letter to KLM. This was followed by the filing of a complaint in the United States District Court for the Eastern District of Pennsylvania on May 18, 1973. That complaint was subsequently dismissed without prejudice.

2. Officially, Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000 T.S. No. 876.

3. Unless specifically noted otherwise, all references hereinafter to plaintiff or DeMarines will refer to John DeMarines, the male plaintiff.

4. Fed.R.Civ.P. 50(b) requires a party to make a motion for directed verdict after presentation of all the evidence as a condition precedent to obtaining judgment n. o. v. This condition preserves for the trial court, as a question of law, the sufficiency of the evidence and allows the court an opportunity, on a motion for judgment n. o. v., to pass on that strictly legal question. Without preservation of objections to sufficiency, the trial court would be asked "to re-examine the facts already tried by the jury, and this the court may not do without violating the Seventh Amendment." 5A *Moore's Federal Practice* par. 50.08 at p. 50–87–8 (2d ed. 1977) quoting, *Mutual Ben. Health & Accident Ass'n v. Thomas*, 123 F.2d 353, 355 (8th Cir. 1941), cited in, *Lowenstein v. Pepsi-Cola*, 536 F.2d 9, 11 (3d Cir.), *cert. denied*, 429 U.S. 966, 97 S.Ct.

## I. OCCURRENCE OF AN "ACCIDENT"

■ The parties agree that the provisions of the Warsaw Convention,[5] as modified by the Montreal Agreement, 31 Fed.Reg. 7302 (1966), apply to this action and govern the rights of the parties. The liability of an airline to its passengers is delineated in Article 17 of the Warsaw Convention, which reads:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, *if the accident* which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

(Emphasis supplied). Thus, Article 17 requires as a condition precedent to liability under the Warsaw Convention a determination that an "accident" occurred and that the accident proximately caused the injury sustained.

Precisely what kind of event can be labelled an "accident" is not, however, defined in the Warsaw Convention. In formulating its jury charge on this subject, the district court canvassed the few cases which discuss the meaning of accident under the Convention, *e. g., MacDonald v. Air Canada*, 439 F.2d 1402 (1st Cir. 1971) (plaintiff's fall in baggage claim area of terminal did not establish occurrence of accident within meaning of the Convention), *Husserl v. Swiss Air Transport Co., Ltd.*, 351 F.Supp. 702 (S.D.N.Y.), *aff'd* 485 F.2d 1240 (2d Cir. 1972) (hijacking is within the ambit of accident), *Chutter v. KLM Royal Dutch Airlines*, 132 F.Supp. 611 (S.D.N.Y.1955) (fall from aircraft doorway after removal of boarding stairs constitutes accident), as well as cases defining accident in a more general context, *e. g., Ketona Chemical Corp. v. Globe Indemnity Co.*, 404 F.2d 181 (5th Cir. 1969) (accident defined as "unexpected untoward event which happens without intention or design"), *Koehring Co. v. American Automobile Insurance Co.*, 353 F.2d 993 (7th Cir. 1965) (accident defined as "an undesigned, sudden and unexpected event").

■ Distilling the analytical essence of these decisions, the district court delivered the following charge:

An accident is an event, a physical circumstance, which unexpectedly takes place not according to the usual course of things. If the event on board an airplane is an ordinary, expected, and usual occurrence, then it cannot be termed an accident. To constitute an accident, the occurrence on board the aircraft must be unusual or unexpected, an unusual or unexpected happening.

396, 50 L.Ed.2d 334 (1976). Therefore, failure to move for a directed verdict in accordance with the rules precludes a motion for judgment n. o. v.

At trial in the instant case, KLM timely moved for a directed verdict at the close of the plaintiffs' case, but it failed to preserve its objection after presentation of all of the evidence. KLM contends that it properly made a motion for directed verdict at the close of the case by handing a written motion to the district judge's law clerk. However, it appears that this motion did not come to the attention of the judge and that he had no opportunity to rule on it before submitting the case to the jury. Fed. R.Civ.P. 5(e) provides that pleadings and other papers required to be filed under the rules shall be made by filing with the clerk of the court "except that the judge may permit the papers to be filed with him . . . ." In this instance, permission of the judge was neither sought nor given. Thus KLM's motion for directed verdict was untimely and the court was precluded from ruling on the motion for judgment n. o. v.

5. Article 1(1) of the Warsaw Convention states the scope of its application:

This convention shall apply to all international transportation of persons, baggage, or goods performed by aircraft for hire.

"International transportation" is defined in Article 1(2) to mean:

any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, are situated . . . within the territory of a single High Contracting Party [and] there is an agreed stopping place within a territory . . . of another power.

*See* 49 U.S.C. § 1502 (Warsaw Convention text). For an illuminating discussion of the Warsaw Convention and the proceedings leading up to the Montreal Agreement, *see* A. Lowenfeld and A. Mendelsohn, *The United States and the Warsaw Convention*, 80 Harv.L.Rev. 497 (1967).

433 F.Supp. at 1052. This definition of accident, which is in accord with our own reading of the relevant case law, properly presented the jury with the correct legal standard for determining the occurrence of an accident.[6] We do have a serious question, however, whether the plaintiff produced sufficient evidence from which a jury could reasonably infer that an "accident" did in fact occur.

Viewing the evidence in the light most favorable to the party who secured the jury verdict, *Kademenos v. Equitable Life Assurance Soc. of U.S.*, 513 F.2d 1073, 1074 (3d Cir. 1975), we conclude that the plaintiffs presented sufficient evidence from which the jury could infer the following:

1. plaintiff suffered an injury during the KLM flight;
2. medical experts tied plaintiff's injury to rapid decompression;
3. several other passengers experienced pain or discomfort in their ears; and
4. one passenger overheard a flight steward tell another passenger, to whom he was administering oxygen, that "it was a wonder that other people hadn't complained because they were having a problem with the air pressure."

A parallel fact pattern was presented in *Warshaw v. Trans World Airlines, Inc.*, 442 F.Supp. 400 (E.D.Pa.1977), in which an airline passenger who suffered a hearing loss during an international flight brought suit against the airline to recover damages under the Warsaw Convention. The district court, acting as fact-finder, found that cabin repressurization was a cause of injury to the plaintiff. Nevertheless, the court held that the plaintiff was barred from recovery, as a matter of law, because he failed to establish that his injury resulted from an accident:

Had the evidence established abnormality or malfunction in the operation of the aircraft, then we would have been presented with an entirely different situation. Instead, we find that the injury to plaintiff, regrettable as it is, is clearly one that was proximately caused during normal operations of a properly functioning aircraft, on an otherwise uneventful and ordinary flight.

442 F.Supp. at 413.

We find the instant case difficult to distinguish from *Warshaw*. Examining the evidence favorably to plaintiff—and disregarding defendant's presentation of testimony by crew members that there was no pressurization problem—it would appear the most the jury could have inferred was that pressure changes during the flight caused plaintiff's injury. The only evidence the fact-finder had before it was that six out of 191 passengers experienced ear pains and discomfort; it could not reasonably infer from this that such pressure change was an "unusual or unexpected happening." Common experience suggests that an individual's reaction to air pressure or depressurization may depend on that person's health or physical characteristics.[7] Similarly, the hearsay testimony from an unidentified, nontechnical crew member alluding to a "problem" with the air pressure does not indicate an abnormality or malfunction in the airplane's operation; it proves no more than a fluctuation in pressure commonly incident to commercial jet flights. Finally, plaintiff's medical experts had neither specialized in aviation medicine nor were they qualified as pressurized aircraft experts. The experts provided no testimony that the air pressurization inside the aircraft cabin was in any way unusual or unexpected. Absent testimony indicating that the plane's cabin pressure change was the re-

6. The district court's definition is also supported by a recent case unavailable to it at time of trial, *Warshaw v. Trans World Airlines, Inc.*, 442 F.Supp. 400 (E.D.Pa.1977), in which the trial judge ruled that an injury arising from ordinary, anticipated and required programmed changes in the aircraft's operation, all of which were performed purposefully under the careful control of the plane's crew in the normal and prudent course of flight control is not [an accident].
*Id.* at 413.

7. *See* 4B R. Gray, *Attorneys' Textbook of Medicine*, pars. 303.02, 303.14, 303.23 (3d ed. 1978).

sult of some "unusual or unexpected happening," we have grave doubts that a finding that an accident occurred in this case is legally supportable. However, we need not decide the question whether plaintiffs' evidence is sufficient to go to the jury in view of the procedural deficiency precluding judgment n. o. v.[8] We speak solely to provide guidance to the parties and the district court in the new trial that we order.

## II. TRIAL ERRORS CLAIMED BY DEFENDANT KLM

KLM has asserted on appeal that the district court made several erroneous rulings during the course of the trial, including, *inter alia* :[9]

1. error in charging the jury that KLM had the burden of proving delivery of a passenger ticket to plaintiff;

2. error in excluding defendant's expert medical testimony as to plaintiff's causative pre-existing medical difficulties; and

3. error in excluding evidence that plaintiff was only one of 191 passengers to have submitted a claim against KLM.

We will discuss these contentions in turn.

### A. Delivery of the Ticket

Article 3(2) of the Warsaw Convention provides, in pertinent part:

if the carrier accepts a passenger without a passenger ticket having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability.[10]

Whether the defendant delivered a ticket to plaintiff assumes critical importance in this case; if no ticket were delivered, plaintiff's recovery is not restricted by the $75,000 limitation.

Plaintiff produced six witnesses, DeMarines' fellow passengers on the charter, each of whom testified that he could not recall ever having received a ticket. Defendant could produce no passengers who did remember receiving a ticket. The best rebuttal evidence KLM could muster was testimony by Rocco Papulardo, a charter sales agent for KLM, who presented records showing that tickets had been made up on May 9, 1972. He testified that if "ordinary practice" had been observed, a KLM representative would have taken the tickets and boarding passes to Pittsburgh, and then to Philadelphia, where he would have distributed them to the passengers when they checked in at their departure site. Significantly, however, this agent testified only to routine practice, not to any personal knowledge that the tickets had, in fact, been delivered to the passengers. On the basis of this record, we agree with the district court that "the jury could not reasonably have found anything other than 'non-delivery.'" *DeMarines, supra*, at 1063. See *Mertens v. Flying Tiger Line*, 341 F.2d 851, 857 (2d Cir.), *cert. denied*, 382 U.S. 816, 86 S.Ct. 38, 15 L.Ed.2d 64 (1965).[11]

After carefully considering each of these contentions, we find no merit to them.

Defendant further asserts that the verdict was grossly excessive. In view of our disposition of this case, we need not reach that issue.

---

**8.** *See* n. 4 *supra*.

**9.** KLM also contends that the district court erred by:

1. refusing to charge that the claimed "explosion" in plaintiff's head was not an "accident" within the meaning of Article 17 of the Warsaw Convention;

2. improperly conveying to the jury an impression that the court was of the opinion that an "accident" had, in fact, occurred;

3. permitting plaintiff to introduce the issue of ticket delivery seven months after discovery was completed—in the first trial;

4. entering judgment in favor of DeMarines in excess of $75,000 because there was no proof of negligence, citing *Berguido v. Eastern Airlines*, 369 F.2d 874 (3d Cir. 1966).

**10.** The liability limitation, in article 22(1), was originally $8,300, but was expanded to $75,000 by the Montreal Agreement in 1966.

**11.** Even if the tickets had been delivered as KLM suggests, it is arguable that such delivery, immediately prior to flight, would have been inadequate, failing to afford passengers "a reasonable opportunity to take measures to protect [themselves] against the limitation of liability." *Mertens v. Flying Tiger Line, Inc., supra*, at 856. Such untimely delivery would have made it impossible for passengers to protect themselves by the purchase of commercial

Assuming, however, that upon remand the defendant is able to introduce evidence supporting its assertion that the ticket was delivered, the question of who bears the burden of establishing delivery or non-delivery becomes significant. In its charge, the district court instructed the jury:

Now this is where the burden of proof is on the defendant. The burden is on the defendant to prove delivery of a passenger ticket to the plaintiff.

Defendant KLM takes exception to this charge, and makes three arguments why the burden should be on plaintiff to prove non-delivery.

First, defendant cites *Mertens v. Flying Tiger Line, Inc.*, 8 Av.Cas. 18,023 (S.D.N.Y.), *rev'd on other grounds*, 341 F.2d 851 (2d Cir.), *cert. denied*, 382 U.S. 816, 86 S.Ct. 38, 15 L.Ed.2d 64 (1965), in which plaintiff's recovery for wrongful death was limited by the provisions of the Warsaw Convention. In a post-trial motion for a new trial, plaintiffs argued that the district court should have charged that the burden of proof as to ticket delivery was on the defendant. The district court held to the contrary, citing *Grey v. American Airlines, Inc.*, 227 F.2d 282 (2d Cir. 1955), *cert. denied*, 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956), which expressly held that plaintiffs had the burden of proof with respect to the willful misconduct (another basis for avoiding the liability limitation) of the carrier. Reasoning by analogy, the court in *Mertens* concluded that there was no compelling reason why the burden of proof under the comparable exception of the damage limitation clause—ticket delivery—should be treated differently.

Second, KLM points to "legislative history" of sorts, marshalling an impressive array of statements from representatives at the Hague Protocol in 1955, which considered and adopted amendments to the Warsaw Convention. These statements demonstrate that a number of representatives intended that the burden of proof be cast upon the plaintiff. For example, Professor Drion of The Netherlands stated:

[U]nder the Warsaw Convention, there could be no doubts as to the burden of proof being on the claimant if he wanted to have unlimited liability imposed on the carrier. The limitation of liability was the rule and there was a certain provision which said that, in certain circumstances, that rule would not apply. It was up to the claimant to prove that these circumstances existed.

I International Conference on Private Air Law ICAO Doc. 7686–LC/140 at 130.

Finally, KLM points to analogous case law in Pennsylvania, citing *Johns v. Estate of Cheeseman*, 457 Pa. 414, 322 A.2d 648 (1974), and *McPhilomy v. Lister*, 341 Pa. 250, 19 A.2d 143 (1941). In both of those cases, plaintiffs were required to shoulder the burden of proving facts that would toll the running of the statute of limitations, or remove its bar. Similarly, defendant argues, once defendant has pleaded the facial limitation of liability under the Warsaw Convention, it is incumbent upon plaintiff to prove facts sufficient to lift the recovery ceiling.

There is considerable merit in this point of view. A major airline such as KLM issues millions of passenger tickets each year. A requirement that an airline be required to prove delivery of a ticket to each passenger imposes an enormous and costly burden upon the airline as compared with the burden of the individual passenger concerned who asserts liability in excess of the limits permitted by the Warsaw Convention.

In response, plaintiff raises several points supporting its contention that the defendant and not the plaintiff should bear the burden of proving ticket delivery. First plaintiff argues that *Mertens, supra*, is not persuasive: the *Mertens* court's analogy between claimant's burden to prove willful

insurance or to take such other steps for self-protection as the passengers see fit. *Warren v. Flying Tiger Line, Inc.*, 352 F.2d 494 (9th Cir. 1965); *see Lisi v. Alitalia Linee Aeree Italiane*,

370 F.2d 508 (2d Cir. 1966), *aff'd by an equally divided court* 390 U.S. 455, 88 S.Ct. 1193, 20 L.Ed.2d 27 (1968).

misconduct, as established in *Grey*, and the burden of proof for ticket delivery does not withstand close scrutiny. Because one of the purposes of the Warsaw Convention was to protect air carriers from excessive claims, it would have been counterproductive to saddle the airlines with the burden of proving lack of willful misconduct when destruction of the aircraft made a determination of the accident's cause very difficult. *DeMarines, supra* at 1061. But such considerations do not apply, plaintiff argues, when the issue is merely whether a ticket has been delivered. The Warsaw Convention's imposition of a mandatory duty upon carriers to deliver a ticket, as well as the ability of the airline to check its record of ticket sales demonstrate no compelling reason to place the burden of proving delivery on plaintiff; in fact, plaintiff asserts, quite the contrary.

Second, plaintiff notes that the discussions at the Hague Protocol are far from controlling and that defendant's reliance on them is misplaced. Not only was there a lack of unanimity among the representatives, resulting in a failure to adopt any clarifying language in the amendments, but the United States rejected the Hague Protocol. Finally, plaintiff asserts that the Warsaw Convention places an affirmative burden upon the carrier to plead delivery of a ticket if it seeks to limit its damages, and that, as a matter of hornbook law, the burden of proof is placed on the party asserting the affirmative defense.

Both parties' analyses of this issue lacks clarity, for it is really a bifurcated question: (1) who has the burden of producing evidence, and (2) who has the burden of ultimate persuasion? Framing the issue simply as a matter of determining "burden of proof" has long been recognized as analytically unproductive, "[t]he distinction [between the two burdens] is now very generally accepted, although often confused by careless speech." *Hill v. Smith*, 260 U.S. 592, 597, 43 S.Ct. 219, 220, 67 L.Ed. 419 (1923) (Holmes, J.). *See Psaty v. United States*, 442 F.2d 1154, 1159 (3d Cir. 1971).

■ The burden of producing evidence, often termed the burden of going forward, is a duty owed to the trial judge to satisfy him that there is sufficient evidential material from which the jury could reasonably infer the existence of the fact to be proved. IX *Wigmore on Evidence* § 2487 at 278–79 (3d ed. 1940). Only after the initial burden of producing evidence (and it may shift to the other party) has been met, does the burden of ultimate persuasion arise. The party who bears that burden bears, in effect, a "risk of non-persuasion" for that party must persuade the fact-finder that the existence of a fact is more probable than its non-existence (in a civil case) or risk an adverse finding. C. McCormick, *Law of Evidence* § 339 (2d ed. 1972).

Which party should bear these burdens is no easy question, for there is "no one principle, or set of harmonious principles, which afford a sure and universal test for the solution of a given class of cases." IX *Wigmore on Evidence* § 2486 at 278. The problem is doubly difficult for this court to resolve, for neither the parties nor the district court have addressed themselves to a crucial aspect of it. However persuasive KLM's presentation of legislative history may be, however cogent the reasoning of the cases plaintiff cites appears, neither are prime determinants in this case of where the twin burdens of producing evidence and persuasion lie.

■ The question of which party bears the burden of proof in a diversity case ordinarily is a matter of substantive law within the meaning of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and so is governed by state law. *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943); *Alcaro v. Jean Jordeau, Inc.*, 138 F.2d 767 (3d Cir. 1943). In such a case, the district court is obligated to determine the burden of proof in accordance with the law of the forum state as required by the choice of law principles of *Klaxon v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Following that view it would appear that in the instant case, the question of who bears the burden of proof is a matter of

Pennsylvania law. However, it may well be that because this case implicates the commerce and supremacy clauses of the Constitution and because this action is based on provisions of the Warsaw Convention, which pertains to international transportation by aircraft for hire, federal law may govern.[12]

■ The district court made no finding of which law governs the question of the burden of proof and neither party has briefed this crucial issue. Because a determination of the applicable rule of law pertaining to the burden of proof is so bound up with the fact-finding process at the trial level, we deem it inappropriate for us to rule on the question without the district court having had an opportunity first to consider it. *See Schum v. Bailey*, 578 F.2d 493 (3d Cir. 1978).

### B. Exclusion of Defendant's Expert Medical Testimony

During the testimony of one of defendant's medical experts, Dr. Louis Welsh, who had been relating the results of his medical examination of DeMarines, counsel for plaintiff asked for a conference at side bar. In response to plaintiff's objection to the line of testimony about to be launched, the court requested an offer of proof from KLM's counsel as to the substance of Dr. Welsh's testimony. Counsel stated:

> He [Dr. Welsh] is going to say that this man's [plaintiff's] present condition is caused by his pre-existing symptom of cervical arthritis, diabetes, and circulatory problems. That's the explanation of Mr. DeMarines' condition.

Plaintiff objected to the introduction of this testimony on the ground that such information was not included in Dr. Welsh's report, which had been furnished to plaintiff's counsel prior to trial. A pre-trial order in this case, signed by counsel for both parties and the district court, provided that:

> No expert witness will be permitted to testify unless all opposing counsel, prior

to the date of this Order, have been informed in writing as to the substance of said expert's testimony.

The district court sustained the objection excluding the testimony "because, frankly, the very reason for handing over reports is so both sides will be aware of what's going on and not be sprung any surprises." The court offered KLM's counsel the opportunity to find in the report an indication that Dr. Welsh would testify as to pre-existing medical problems, but counsel failed to do so.

On appeal, however, KLM contends that plaintiff had sufficient notice of Dr. Welsh's intended testimony, pointing first to its answer to the complaint which stated as a second affirmative defense:

> . . . that any illness, injury or disability suffered by husband-plaintiff was a continuation of a prior illness, condition or disability which existed at the time of the injury alleged in the Complaint.

Further, KLM points to a pre-trial order which states:

> Defendant's medical experts will opine that plaintiff John DeMarines' injuries . . . are a result of his preexisting infirmities and his own peculiar susceptibility and response to routine pressure changes commonly encountered on any normal flight in a pressurized commercial airliner.

■ The applicable standard of review to determine whether the district court abused its discretion in excluding testimony for failure to comply with pre-trial notice requirements was recently stated by the court in *Meyers v. Pennypack Woods*, 559 F.2d 894 (3d Cir. 1977). In that case, this court reversed the district court's refusal to admit testimony of a witness not named in a pre-trial memoranda on the basis of four factors:

1. the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified;

---

12. Recently, *Benjamins v. British European Airways*, 572 F.2d 913 (2d Cir. March 6, 1978), overturned a long line of precedents in the Second Circuit to hold that the Warsaw Convention creates a federal cause of action under

28 U.S.C. § 1331. Under those circumstances, a federal court, not sitting in diversity, would not be bound by state substantive law and would be free to fashion a rule on the burden of proof under federal law principles.

2. the ability of that party to cure the prejudice;

3. the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court;

4. bad faith or willfulness in failing to comply with the court's order.

*Id.* at 904. Additionally, we noted the significance of the practical importance of the evidence excluded. *Id.* at 905; *accord, Dudley v. South Jersey Metal Inc.,* 555 F.2d 96, 99 (3d Cir. 1977).

Examining the facts of this case in the light of our standard of review, we hold that the expert testimony should not have been excluded. It may be that KLM did not conform precisely to the pre-trial notice requirements, and we are sensitive to the district court's need to maintain control over the discovery process and the fair, orderly presentation of evidence. Yet, exclusion of evidence is a drastic sanction, *Coleco Industries v. Berman,* 567 F.2d 569, 576 n. 14 (3d Cir. 1977), which must pass the strict *Meyers* test to be upheld.

In the instant case, KLM's pleading and the pre-trial order giving notice that pre-existing medical infirmities would be part of the case gives little support to plaintiff's contention of surprise and prejudice. · And even if plaintiff's counsel were surprised by *who* gave the testimony, he should not have been surprised by its substance. Further, Dr. Welsh's testimony occasioned no disruption in the trial, nor was there any assertion that the defendant exercised bad faith. In view of these facts, and because of the critical importance of this evidence to defendant's case, we are constrained to hold that the district court's exclusion of Dr. Welsh's testimony as to pre-existing medical infirmities was reversible error.

### C. Exclusion of Evidence of Absence of Other Claims

The trial court's exercise of discretion is generally deferred to in dealing with the admissibility of proof of other accidents and we would be loathe to reverse solely on this ground. But because this case must be retried for reasons to which we have already alluded, we express our view on the district court's exclusion of evidence of the absence of other claims arising out of the Zurich-Amsterdam flight.

All of the evidence introduced by plaintiff on the issue of whether an "accident" had occurred bore upon the presence or absence of an injurious effect upon the passengers from the alleged accident. The plaintiff's own injury was the most probative evidence that an "accident" had occurred. The proffered proof of an absence of other claims tends to prove the absence of other injuries and is, therefore, comparably relevant. The possibility that persons may have sustained injuries without filing claims should not prevent the admission of pertinent evidence, and its negative aspect merely goes to the weakness and weight of such evidence rather than its admissibility. Rule 401 of the Federal Rules of Evidence states that evidence is relevant if it tends to make the existence of a fact more probable or less probable than it would be without the evidence. If other claims had been made against KLM, evidence of those claims would have been relevant to make the existence of an accident more probable. Proof of the absence of claims, though not carrying as much weight, makes the existence of the fact of the "accident" less probable than it would be without the evidence. We believe it was error to have excluded it. *See Becker v. American Airlines, Inc.,* 200 F.Supp. 243 (S.D.N.Y.1961); cases cited in Annot. 31 A.L.R.2d 190 (1953 Supp.); C. McCormick, *Law of Evidence* § 200 (2d ed. 1972).

### D. Excessive Verdict

Inasmuch as this case must be retried, we need not dwell long upon KLM's contention that the verdict was grossly excessive and unsupported by the evidence. One element of the testimony as to damages bears comment, however. The plaintiff testified that he was forced to forego an offer to become the Solicitor of the South Whitehall Township School District— at a salary of $12,000 to $15,000 annually—

because of his injuries. We believe that the trial judge should not have assumed that it was reasonable for the jury to have considered as an element of past and future loss of earning capacity the salary of $15,-000 per year as solicitor. DeMarines claimed that he already was working six days per week and Sunday mornings averaging "95 to 110 hours per week" which amounts to approximately eighteen to twenty hours per day for a six day week. Even if he enjoyed such remarkable vitality and drive as to average such an extraordinary number of hours on a regular work schedule year after year, we believe that it would have been unreasonable for the jury to have concluded that DeMarines also could have assumed the duties of school solicitor without suffering a reduction in earnings which he might have earned otherwise as a practicing attorney.

### III.

Accordingly, the judgment of the district court will be reversed and the case remanded for a new trial not inconsistent with this opinion.