Stanley ABRAMSON, Appellant,

v.

JAPAN AIRLINES CO., LTD.

No. 83–5750.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
May 22, 1984.

Decided July 19, 1984.

Rehearing Denied Sept. 14, 1984.

Bruce D. Meller, Lawrence A. Levey, Peckar & Abramson, Hackensack, N.J., for appellant.

Condon & Forsyth, New York City, Robert P. Gorman, Durand, Gorman, Heher, Imbriaco & Lynes, Newark, N.J. and Princeton, N.J., for appellee.

Before GARTH and SLOVITER, Circuit Judges, and NEAHER, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

### Facts and Procedural History

Stanley Abramson, plaintiff in the district court, appeals from the entry of summary judgment for the defendant, Japan Air Lines Co., Ltd. (JAL). The relevant facts are not disputed for purposes of the appeal.

On August 23, 1982, Abramson and his wife were passengers on JAL Flight No. 005 from New York to Tokyo, Japan, with an intermediate stop in Anchorage, Alaska. Shortly after take-off from Anchorage to Tokyo, Abramson suffered an attack from a pre-existing paraesophageal hiatal hernia. Abramson had been under medical care for this condition for approximately six years, but he did not inform JAL of this condition before the flight. Abramson had been hospitalized in June of the preceding year with internal bleeding, and surgery on an elective basis had been recommended to alleviate the condition.

According to Abramson, he can alleviate an attack by a "self-help" remedy of lying down, massaging his stomach from side to side, and, on occasion, by self-induced vomiting. Abramson's wife testified that she asked a JAL stewardess for a place where he could lie down and employ his "self-help" remedy, but was advised there were no empty seats. Discovery revealed, however, that there were nine empty seats in the first class section.

Plaintiff alleges that without the opportunity to employ "self-help", his condition worsened and he was hospitalized upon arriving in Tokyo. Subsequently, he contracted pneumonia and, on the advice of a Japanese physician, returned immediately to the United States where he underwent surgery to correct his hernia condition.

Plaintiff's complaint, filed in New Jersey state court and removed to federal court by the defendant, alleged in Count I that the negligent conduct of JAL and its employees aggravated his hiatal hernia. Abramson relies on the statement of a physician that had Abramson been able to employ his "self-help" remedy it would have been successful and would have prevented the pneumonia and obviated the need for immediate surgery. In Count II, plaintiff alleged that under the terms of the Warsaw Convention and the Montreal Agreement JAL is liable without proof of fault. In Count III, plaintiff alleged that the willful misconduct of JAL and its employees caused his injuries, entitling him to punitive damages.

The district court entered summary judgment for the defendant. The district court held there was no genuine issue of material fact with respect to the Warsaw Convention claim. It ruled that Article 17 of the Convention creates a cause of action only for injuries proximately caused by some "accident" on board the plane, and on the basis of the facts presented there was no "accident". The court did not consider whether there was a genuine issue of material fact with respect to Abramson's state law claims, because it held that "[t]he absence of an 'accident' precludes liability, both compensatory and punitive," under

---

* Hon. Edward R. Neaher, United States District Court for the Eastern District of New York, sitting by designation.

the state law negligence and willful misconduct claims. App. at 236a.[1]

On appeal, Abramson argues that the incident alleged constitutes an "accident" under the Warsaw Convention, and that the district court erred in holding that the Warsaw Convention precludes alternative bases for recovery in the absence of an accident.

## II.

*Applicability of the Warsaw Convention*

■ The parties are in agreement that the flight in question was in international transportation. The circumstances under which a carrier may be liable to its passengers in international transportation are specified in Article 17 of the Warsaw Convention, a treaty of the United States:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, *if the accident which caused the damage so sustained took place on board the aircraft* or in the course of any of the operations of embarking or disembarking.

49 Stat. 3018 (emphasis added).[2] The district court gave summary judgment on the Warsaw Convention claim. It found: "Nothing in [the deposition testimony] so much as remotely suggests the occurrence on the flight of any event that could rationally be regarded as an 'accident' from which plaintiff's claimed injury resulted." App. at 240a.

The Warsaw Convention does not itself define the term "accident". This court addressed the definition of "accident" within the meaning of Article 17 of the Warsaw Convention in *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193 (3d Cir. 1978). We held that the district court's charge to the jury as follows presented the correct legal standard for determining the occurrence of an accident:

An accident is an event, a physical circumstance, which unexpectedly takes place not according to the usual course of things. If the event on board an airplane is an ordinary, expected, and usual occurrence, then it cannot be termed an accident. To constitute an accident, the occurrence on board the aircraft must be unusual, or unexpected, an unusual or unexpected happening.

*Id.* at 1196. *Accord Warshaw v. Trans World Airlines*, 442 F.Supp. 400 (E.D.Pa. 1977).

Abramson argues that although JAL did not cause his hiatal hernia injury, the alleged aggravation of the injury by JAL's acts and omissions constituted an "unusual or unexpected happening within the definition of" *DeMarines*. He attempts to analogize JAL's refusal to aid him as an unusual occurrence tantamount to other occurrences treated as "accidents", such as the fol-

---

1. The district court's order granting summary judgment was entered September 26, 1983 before plaintiff's papers in opposition were filed. Apparently the district court was unaware the parties had stipulated to adjourn the return date of the motion to October 11, 1983. The court treated plaintiff's subsequent explanation letter as a motion to alter or amend the judgment, and denied the motion on October 11, 1983. In its memorandum accompanying that order, the court referred to the documents filed by Abramson in opposition to summary judgment, and stated that "[h]ad all these materials been submitted in time for consideration before the court ruled on the motion, they would have failed to raise a genuine issue of material fact since they provide no fact basis on which a finding of an 'accident' could be predicated." App. at 240a. Appellant filed a timely notice of appeal from both district court orders.

We do not condone what appears to have been the parties' informal procedure for adjournment without approval by the district court. However, since the district court considered and treated the arguably late documents as part of the summary judgment record, and since we agree with the district court that they would not alter the result, we consider this appeal on the full record before the district court.

2. The Warsaw Convention is the popularly used name for the Convention for the Clarification of Certain Rules Relating to International Transportation by Air, adhered to by the United States June 27, 1934, 49 Stat. 3018, TS No. 876, as modified by the Montreal Agreement, 49 U.S.C. § 1502 note.

lowing: terrorist attacks, *Evangelinos v. Trans World Airlines*, 550 F.2d 152 (3d Cir.1977) (in banc); hijackings, *Krystal v. British Overseas Airways Corp.*, 403 F.Supp. 1322, 1323 (C.D.Cal.1975); and bombings, *Reed v. Wiser*, 555 F.2d 1079 (2d Cir.1977), *cert. denied*, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977).

We are not persuaded that the situations are analogous. In none of those cases was the injury suffered during the course of a routine and normal flight, as here. In the absence of proof of abnormal external factors, aggravation of a pre-existing injury during the course of a routine and normal flight should not be considered an "accident" within the meaning of Article 17. *See Warshaw v. Trans World Airlines*, 442 F.Supp. at 413 (no "accident" where plaintiff's respiratory infection became aggravated during the flight, resulting in permanent hearing loss in one ear, because of a change in cabin pressure which is part of the normal flight procedure). *See also MacDonald v. Air Canada*, 439 F.2d 1402, 1405 (1st Cir.1971) (plaintiff's fall while standing in baggage claim area was not an "accident" because it was equally reasonable to suppose that some internal condition was the cause of the fall).

Nor do we find any support for Abramson in the Ninth Circuit's recent position, which conflicts with *DeMarines* and *Warshaw*, that hearing loss resulting from cabin depressurization is within the Warsaw Convention because it is an injury "proximately caused by the risks inherent in air travel," *Saks v. Air France*, 724 F.2d 1383, 1384 (9th Cir.1984). The injury Abramson suffered, unlike a hearing loss from cabin depressurization, is not a risk either associated with or inherent in aircraft operation. In any event, we are bound by this court's legal interpretation in *DeMarines*.

In *DeMarines*, we expressed "grave doubts" that a finding that an accident occurred would have been legally supportable when the evidence at most supported a finding that pressure change during the flight caused plaintiff's injury "[a]bsent testimony indicating that the plane's cabin pressure change was the result of some 'unusual or unexpected happening'". 580 F.2d at 1197–98. This case presents an even more attenuated claim.

We agree with the district court that the alleged acts and omissions of JAL and its employees during the routine flight on which Abramson was a passenger do not constitute an "accident" for which the Warsaw Convention imposes liability on the carrier. Thus, judgment for defendant on the Warsaw Convention claim was properly entered.

### III.

### *Exclusivity of the Warsaw Convention*

■ The district court failed to reach Abramson's negligence and willful misconduct claims under the apparent belief that these claims were precluded by the Convention's exclusivity of remedy. The district court held:

> The allegations of negligence, or of willful failure, etc., add nothing to the claim, the first because liability, when it exists, arises without regard to negligence and the second because it had meaning only to support punitive damages, which are not recoverable unless there is a right to recover compensatory damages. The absence of an "accident" precludes liability, both compensatory and punitive.

App. at 236a.

JAL argues that "the express language of Article 24 of the Warsaw Convention establishes that its terms exclusively govern this action against JAL." Brief for Appellee at 13. We do not read the provision that way. Article 24 states:

> (1) In the cases covered by articles 18 and 19 [cargo, baggage and delay] any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

> (2) *In the cases covered by article 17* [bodily injury] the provision of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

49 Stat. at 3020, *reprinted in* 49 U.S.C.A. § 1502 note (emphasis added). Since we have already concluded that Abramson's injury was not covered by Article 17 because there was no "accident", Article 24(2) does not by its express terms limit maintenance of actions brought under local law.

All the other courts considering this issue have similarly concluded that the Warsaw Convention's limitation and theory of liability is exclusive when it applies (*i.e.,* when there is an accident), but it does not preclude alternative theories of recovery. Instead, as the court said in *Husserl v. Swiss Air Transport Co.,* 351 F.Supp. 702 (S.D.N.Y.1972), *aff'd,* 485 F.2d 1240 (2d Cir. 1973), where plaintiff filed claims under the Warsaw Convention and for breach of contract of safe carriage and negligence:

> [T]he Convention does not "exclusively regulate" the relationship between passengers and carrier on an international flight, but rather sets limits on and renders uniform certain of the aspects of that relationship.... Thus, it would seem to follow that if the Convention "applies", it applies to limit—not eliminate—liability; if *it does not apply, it leaves liability to be established according to traditional common law rules.*

351 F.Supp. at 706 (emphasis added). In a later proceeding in the same case, the court again reviewed the question whether the Warsaw Convention remedies were both exclusive and preclusive and concluded that injuries which are not covered by the scope of Article 17 of the Convention "may give rise to causes of action not subject to any of the conditions or limits of the Warsaw system." *Husserl v. Swiss Air Transport Co.,* 388 F.Supp. 1238, 1246 (S.D.N.Y.1975).

█ Other courts, after finding the Warsaw Convention inapplicable, have permitted maintenance of claims brought on other grounds. *See Schmidkunz v. Scandinavian Airlines System,* 628 F.2d 1205, 1207 (9th Cir.1980) (reaching plaintiff's negligence claim after disposing of her Warsaw Convention claim); *Martinez Hernandez v. Air France,* 545 F.2d 279, 284 (1st Cir. 1976) (holding that a passenger injured after disembarkation, when Article 17 is inapplicable, is left "to remedies of local law"), *cert. denied,* 430 U.S. 950, 97 S.Ct. 1592, 51 L.Ed.2d 800 (1977); *Hill v. United Airlines,* 550 F.Supp. 1048, 1054 (D.Kan.1982) (holding "we find nothing in the Warsaw Convention to bar a lawsuit for damages as a result of the alleged intentional tort"). *See also In re Aircrash in Bali, Indonesia,* 684 F.2d 1301, 1311 n. 8 (9th Cir.1982) (Warsaw Convention "has never been read to *limit* plaintiffs to a cause of action arising thereunder, but rather to limit the recovery in suits for injury").

The cases cited by JAL to support its argument for exclusivity are not to the contrary. They merely hold that where the Warsaw Convention applies it is exclusive. *See Molitch v. Irish International Airlines,* 436 F.2d 42, 43–44 (2d Cir.1970); *Block v. Compagnie Nationale Air France,* 386 F.2d 323, 326 (5th Cir.1967). JAL also relies on the court's statement in *In re Air Crash Disaster at Warsaw, Poland,* 535 F.Supp. 833, 844–45 (E.D.N.Y. 1982), *aff'd,* 705 F.2d 85 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 147, 78 L.Ed.2d 138 (1983), that the Warsaw Convention exclusively governs all claims for damages arising out of the injury or death of a passenger in international flight, thereby precluding a wrongful death action under state law. That statement, however, must be read in the context there, an airplane crash which is the archetypical "accident" where the Convention's terms specifically apply.

Thus, both the language of Articles 17 and 24 of the Warsaw Convention and the case law precedent lead us to conclude that the district court erred in failing to reach plaintiff's negligence and willful misconduct claims after correctly finding there was no "accident" under the Warsaw Convention.

## IV.

### Conclusion

JAL has asked us to affirm the order granting summary judgment even if the rights of the parties are not governed exclusively by the Warsaw Convention. It argues that as a matter of law it had no

duty to provide Abramson with a place to lie down under the circumstances of this case. That issue, as well as the question of whether there is a genuine dispute of material fact with respect to Abramson's state law negligence and willful misconduct claims, should be addressed in the first instance by the district court. If there is such a fact question, then of course summary judgment would be precluded. Since these claims are based on local law, it follows that the Convention's $75,000 limit would be inapplicable.

In summary, we have concluded that the occurrence that allegedly aggravated plaintiff's condition was not an "accident" within the terms of Article 17 of the Warsaw Convention and that the claim brought under the Warsaw Convention was properly dismissed. However, the district court erred in failing to reach the state law claims. When the Warsaw Convention is inapplicable to the claim raised, it does not serve as a bar to alternative theories of recovery. Accordingly, we will affirm the entry of summary judgment for defendant on Count II of the complaint, and we will vacate the entry of summary judgment for defendant on Counts I and III and remand this case to the district court for further proceedings pursuant to this opinion.