United States Court of Appeals
Fifth Circuit

F I L E D

June 4, 2003

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

———————

No. 02-60686
Summary Calendar

———————

CENTRAL STATES HEALTH & LIFE COMPANY OF OMAHA, NEBRASKA,

Plaintiff-Appellant,

VERSUS

HERBERT LEON BREWER, III,

Defendant-Appellee.

\* \* \* \* \* \* \* \* \* \* \* \* \*

———————

No. 02-60718
Summary Calendar

———————

CENTRAL STATES HEALTH & LIFE COMPANY OF OMAHA, NEBRASKA,

Plaintiff-Appellee,

VERSUS

HERBERT LEON BREWER, III,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Mississippi
ḿ 1:99-CV-383-D-D

Before HIGGINBOTHAM, SMITH, and
CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Central States Health & Life Company of Omaha, Nebraska ("Central States"), appeals a declaratory judgment finding Herbert Leon Brewer, III, continuously disabled for a period of twenty-four months and therefore entitled to benefits under a Central States disability insurance policy. Brewer appeals the denial of his motion to add a counterclaim for bad faith. Finding no reversible error, we affirm.

I.

In January 1999, Brewer, a chiropractor, was issued a Central States disability policy entitling him to benefits in the event of "total disability," defined by the policy as

[the] inability, as a result of sickness or injury to perform the substantial and material duties of your principal occupation for the first 24 months of continuous disability. After the first 24 months of continuous disability, total disability means the inability to engage in any

occupation for which you are qualified by reason of education, training or experience.

The policy also provided Brewer with benefits in the event he became "partially disabled," defined as "the inability, as a result of sickness or injury, to perform one or more of the main duties of your principal occupation, or the inability to perform those duties on a full-time basis."

In 1996, while incarcerated, Brewer strained his upper extremities and neck after he slipped on a wet concrete walkway. Over one year later, he contacted Central States and initiated a claim for disability benefits, submitting medical records from three different doctors, including his treating physician, Dr. Alan Pritchard, who stated that Brewer was "totally disabled" as of the date of the accident.[1]

In August 1999, Central States denied Brewer's claim, then filed a declaratory judgment action seeking a determination that Brewer was neither totally nor partially disabled under the terms of the policy. Before trial, the district court denied Central States'

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Pritchard later retracted this opinion but still concluded that additional testing was needed to determine the extent of Brewer's disability.

motion to strike the designation of experts Dr. Rommell Childress and Dr. John DeSutter and denied Brewer's motion to add a counterclaim for bad faith. The court granted declaratory relief for Brewer, finding him totally disabled for a period of twenty-four months beginning on the date of the accident, and partially disabled thereafter.

## II.

Central States contends the district court erred by refusing to strike Childress and DeSutter as experts for their failure to comply with FED. R. CIV. P. 26(a)(2)(B). The refusal to exclude or limit testimony is reviewed for abuse of discretion. *Black v. Food Lion, Inc.*, 171 F.3d 308, 310 (5th Cir. 1999). We reverse a decision regarding the designation of expert witnesses only in "unusual and exceptional cases." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir. 1996) (citation omitted).

A district court has wide latitude in determining whether an expert report is sufficiently detailed and complete. *Michaels v. Avitech, Inc.*, 202 F.3d 746, 750 (5th Cir. 2000). Rule 26(a)(2)(B) requires that expert reports contain

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial

or by deposition within the preceding four years.

FED. R. CIV. P. 26(a)(2)(B). Central States argues that Childress's five page report does not meet four of Rule 26's requirements; the report allegedly does not contain a complete statement or the bases for Childress's opinions. Also, the report allegedly fails to list cases in which Childress has testified as an expert within the past four years, and it lacks any exhibits.

Even where an expert's report fails to meet the requirements of rule 26, his testimony should be excluded only after an examination of four factors: (1) the party's explanation, if any, for failure to comply with the scheduling order; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the testimony. *Sierra Club*, 73 F.2d at 572.

## A.

Childress's report opines that, following the accident, Brewer was "totally disabled for a minimum of six to eight weeks from doing his normal occupation or any occupation." The report also states that Brewer's medical condition currently precludes him from functioning as a chiropractor on a full-time basis. At his deposition, Childress explained that Brewer "might be able to do some minor manipulations. He may be able to do one a day, but if he tried to do ten, it might literally incapacitate him as far as having increased neck and arm symptoms . . . ."

Noticeably, the report does not expressly state whether Brewer was continuously disabled for a period of twenty-four months following the accidentSSthat is, unable to per-

form the substantial and material duties of his principal occupation. Childress later deposed, however, that Brewer "did meet the definition of total disability." Central States argues that Childress's deposition testimony is outside the scope of what amounts to an incomplete expert report.

The report's statement that Brewer was unable to perform his occupation or any occupation for a minimum of six to eight weeks following the accident is not inconsistent with Childress's deposition testimony that Brewer was totally disabled for twenty-four months. For one, the policy defines total disability as the inability to perform *only* the claimant's principal occupation for a twenty-four-month period. Second, the expert report states that Brewer was unable to engage in any occupation for a *minimum* of six to eight weeks; this does not rule out the possibility of a longer disability.

In any event, and absent unfair surprise or bad faith, an expert may testify as to matters outside his report if the matter is within his expertise.[2] The test is not whether the expert report covers every conceivable question of cross-examination, but whether it provides sufficient detail such that the opposing party is not surprised.

Central States cannot claim it was surprised by Childress's deposition testimony. The report's conclusion that Brewer is currently unable to work full-time as a chiropractor should have put Central States on notice that Childress would testify that Brewer was unable to perform the substantial and material duties of a chiropractor for a twenty-four-month period after the accident.[3] Indeed, the report concludes that Brewer was unable to perform any job for a period of six to eight weeks thereafter. Not surprisingly, Central States does not explain how it was prejudiced.

Second, Central States argues that the report fails to provide satisfactory bases for Childress's conclusions. Specifically, Central States contends that Childress "provides no summary of the data upon which he allegedly relied, other than the Defendant's medical records, nor does Dr. Childress in his expert report specify which doctors or which medical records he reviewed." In fact, however, the report's conclusions are based on a review of Brewer's "entire" medical record, including the "x-rays and MRI scans that document the cervical disc pathology at several levels." We agree with the district court that, in light of Childress's stated examination of Brewer's *entire* medical record, it was unnecessary to inventory the individual documents reviewed.

Third, Central States contends it was prejudiced by the report's omission of the cases in which Childress has testified within the last four years. The report states that Childress has "testified as an expert witness by way of deposition on numerous occasions over the last four years," but omits specific cases in violation of rule 26(a)(2)(B).

An analysis of the four *Sierra Club* factors, however, suggests the district court did not err

---

[2] *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978) (citation omitted); *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201-02 (3d Cir. 1978).

[3] Similarly, in concluding that Childress did not testify outside the scope of his report, the district court noted that Childress "did not testify as to any new opinions. He simply expanded and developed those opinions contained in his report."

by refusing to exclude the testimony. Childress's deposition was not obtained until almost a year after he submitted his report. Despite the report's reference to Childress's testimony in other cases, Central States never moved to compel discovery.[4] Information regarding Childress's previous testimony may or may not have been critical to Central States's case; the district court, however, was not obligated to grant a continuance or strike the testimony to accommodate Central States's inaction.

Finally, Central States contends the expert report violated rule 26 because no exhibits were attached. Childress's testimony made use of only three exhibits: his expert report, his curriculum vitae, and his office notes. The first two were part of the rule 26 disclosure. As to the office notes, in light of Brewer's contention that Childress repeated the notes "almost verbatim in his expert report," Central States does not explain how it was prejudiced by their omission.

### B.

The district court determined that DeSutter, as a treating physician, was not required to submit an expert report. Generally, a treating physician is not considered an expert witness if he testifies about observations based on personal knowledge. *Davoll v. Webb*, 194 F.3d

---

[4] Central States's reliance on *Sierra Club* is misplaced. In that case, the district court struck defendants' experts as a sanction for violating the court's accelerated discovery order. 73 F.3d at 569. Here, Central States alleges a rule 26(a)(2) violation independent of any specific discovery order. Notably, *Sierra Club* affirmed the court's striking of experts under an abuse of discretion standard of review, the same standard we apply here in affirming the court's refusal to strike.

1116, 1138 (10th Cir. 1999). Northern District of Mississippi Local Rule 26.1(A)(2)(f) provides: "A party shall designate treating physicians as experts pursuant to this rule, but is only required to provide the facts known and the opinions held by the treating physician(s) and the summary of the grounds therefor." Accordingly, DeSutter's designation as an expert witness is not conclusive as to his status.

Central States complains that DeSutter testified outside his capacity as a treating physician by making reference to other doctor's reports and medical records. DeSutter, a chiropractor, began treating Brewer in January 1999. According to his two-page report, he has taken "yearly cervical x-rays, an x-ray of Dr. Brewer's right elbow, and performed the following physical tests: Bikele's sign; Froment's sign; Inverted Radical Reflex; Radial Reflex; Tinel sign; and, Grip Strength Test." The report also states that, as part of treatment, DeSutter has reviewed Brewer's medical records, including an MRI report signed by Atkinson.

In concluding that Brewer is totally disabled under the policy, however, the report also states that "chiropractic heath care requires physical exertion and manipulation of a patient's neck and back and an average chiropractor typically performs hundreds of manipulations during the course of one day." At deposition, DeSutter opined that Brewer was disabled to work as a chiropractor; this opinion was based on DeSutter's intimate familiarity with a chiropractor's occupational duties. DeSutter also testified that he had reviewed previous medical records and ordered an MRI report prepared in preparation for testimony; he testified as to his curriculum vitae, prior experience, and publications. These ob-

servations are consistent with expert witness testimony, *Davoll*, 194 F.3d at 1138, so the court erred in concluding that DeSutter's testimony related solely to treatment.

As with Childress, the question becomes whether DeSutter's expert report satisfies rule 26(a)(2)(B). Central States takes issue only with DeSutter's failure to attach extraneous medical records and doctor's notes to his report.[5] Yet, these records, which Central States does not identify, chiefly relate to DeSutter's treatment of Brewer and not to his expert opinion regarding whether Brewer was able to perform the occupational duties of a chiropractor. It is no secret that physicians must utilize a patient's medical record, including the opinions of other doctors, in the course of treatment.

Even where DeSutter's testimony constituted opinion testimony requiring the attachment of Brewer's medical records used as exhibits, Central States does not argue how it was harmed by the omission. DeSutter's report mentions various tests performed on Brewer, including the 1998 MRI report signed by Atkinson. Central States was aware that DeSutter's opinion was based, at least in part, on tests performed by other doctors. With over a year to obtain these documents, Central States took no action. Therefore, the court did not err by admitting DeSutter's testimony.

---

[5] Central States's brief provides record citations but does not mention the specific doctor's notes and records omitted from DeSutter's report. Based on our review of the deposition testimony, outside of Atkinson's MRI report, which DeSutter referred to on direct examination, all other extraneous reports and records were mentioned on cross-examination. As with Childress, DeSutter was not expected to anticipate every possible question in Central States' cross-examination.

## III.

Central States argues there is insufficient evidence to support judgment for Brewer. We reverse findings of fact only where, after reviewing the record, we are left with a definite and firm conviction that error has been committed. *Reich v. Lancaster*, 55 F.3d 1034, 1045 (5th Cir. 1995). The district court "has the decided advantage of first hand experience concerning the testimony and evidence presented at trial." *Id.*

The court reasonably concluded that Brewer was unable to perform the substantial and material occupational duties of a chiropractor for twenty-four months following his accident. Childress testified that Brewer's condition prevents him from performing chiropractic manipulations for a sustained period of time; he also testified that Brewer was unable to perform the occupational duties of any profession for a minimum of six to eight weeks following the 1996 accident. DeSutter testified that Brewer could not return to work as a chiropractor and that Brewer complained of pain consistent with objective medical tests. Samuel Cox, Central States's vocational expert, and Dr. David Strauser, Brewer's vocational expert, stated that Brewer may have difficulty bending, stooping, and reaching, making it difficult to work as a chiropractor.

Central States argues that the district court erroneously ignored objective evidence to the contrary. Relying on the vocational experts' testimony that a chiropractor must occasionally lift twenty to fifty pounds, Central Statess points to video surveillance tapes showing Brewer, with the aid of his eight-year-old son, lifting several fifty-eight-pound fencing gates. The tape also shows Brewer lifting a bag of dog food and fueling his vehicle several times.

We have viewed the tapes and are not convinced they are probative. The evidence adduced at trial indicates that Brewer is unable to perform his occupational duties on a sustained basis, not that he is incapable of lifting heavy objects for brief intervals. In any event, Brewer's son assisted Brewer by holding one end of the gates while Brewer lifted and slid them into the back of a truck. A person with little physical ability could have performed any of the light tasks displayed on the tapes.

Similarly, the testimony of Sheriff's Deputy Kelly Hall does not undermine Brewer's claim to disability benefits. Hall testified that while incarcerated, Brewer performed several chiropractic manipulations and adjustments on her and her husband. Again, this testimony shows, at most, that Brewer is capable of performing infrequent, non-repetitive tasks. As the testimony indicated, Brewer's occupational disability lies in his difficulty performing chiropractic duties on a sustained basis.

IV.

Brewer appeals the denial of his motion to add a counterclaim for bad faith. We review a denial of leave to amend for abuse of discretion. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997) (citation omitted). The discretion of the district court is limited by rule 15(a), which provides that "leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a).

The court denied Brewer's motion as "untimely." The original scheduling order set a deadline of October 1, 2000, for amending all pleadings. A month after the deadline had passed, both parties filed a Joint Motion to Amend Case Management Plan and Scheduling Order, proposing a new deadline for amending all pleadings to March 1, 2001. This

motion was denied. Following a continuance, the court ordered that all discovery be completed by July 13, 2001, and that "all motions other than motions *in limine*" be filed by August 13, 2001.[6] The court did not explicitly set a new deadline for amending pleadings. The discovery deadline was subsequently extended to August 13, 2001; no other deadlines were affected by that order.

The court maintained that the deadline for amending pleadings had remained October 1, 2000, all along, making Brewer's motion untimely by over six months. Brewer contends the court's subsequent order that "all motions other than motions *in limine*" be filed by August 13, 2001, included amendments to pleadings. Further, he argues that the bad faith claim was developed only as a result of discovery conducted before the August 13 deadline.

Leave to amend should be freely given "[i]n the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The deadline extension, though re-

---

[6] Central States' brief erroneously states that the magistrate judge's order extended "the deadline for all other Motions other than Motions in *Limine* [sic] to July 13, 2001, and the Motion to Amend Pleadings to March 1, 2001." In fact, the order makes *no reference* to a new deadline for amending pleadings, nor is the date March 1, 2001, mentioned anywhere in that order. We do not appreciate counsel's liberties, intentional or not, with the record; such material misrepresentations are subject to sanction.

quiring that all motions other than motions *in limine* be filed by August 13, 2001, makes no express mention of a change in the deadline for amending pleadings. That deadline was previously set at October 1, 2000; the parties' joint November 2000 motion proposing to extend the deadline to March 1, 2001, was denied. Therefore, the court did not abuse its discretion by denying, as six months tardy, Brewer's proposal to add a counterclaim for bad faith.

Generally, parties should be granted leave to amend their pleadings where discovery uncovers new information. But, we reject Brewer's contention that the grounds for his bad faith claim were developed only as a result of the discovery immediately preceding the August 13, 2001, deadline. A claim for bad faith in the payment of insurance benefits requires that "(1) the insurer has no reasonable basis for denying or delaying payment of the claim or (2) the insurer knew or should have known that there was no reasonable basis for denying or delaying payment of the claim." *Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 317 (Tex. 1994).

Brewer contends that, as a result of discovery preceding the August 13, 2001, deadline, he learned that Central States' in-house medical expert was an internist without specific orthopedic experience and that critical pages were missing from his claim file.[7] The basis of a bad faith claim, however, lies in the reasonableness of Central States' refusal to pay benefits. This reasonableness (or lack thereof) should have been apparent to Brewer long before discovery conducted on the heels of the August 13 deadline.

The judgment in both appeals is AFFIRMED.

---

[7] Central States objected to the discovery of these documents based on the attorney-client privilege.