**Thelma WALKER, Individually and as Administratrix of the Estate of Father Patrick DeSouza Walker, Deceased, Plaintiff,**

v.

**EASTERN AIR LINES, INC., Defendant.**

**90 Civ. 4826 (PKL).**

United States District Court, S.D. New York.

Sept. 24, 1991.

Fisher, Fallon, Salerno, Betlesky & Kelly, New York City (John A. Fisher, of counsel), for plaintiff.

Gallagher & Gosseen, Mineola, N.Y. (James A. Gallagher, Jr., of counsel), for defendant.

## ORDER AND OPINION

LEISURE, District Judge:

This is a negligence action brought by plaintiff Thelma Walker ("plaintiff"), individually and as administratrix of the estate of her deceased husband, Father Patrick DeSouza Walker, against defendant Eastern Air Lines, Inc. ("Eastern"). Eastern has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, Eastern's motion is denied.

### Background

On July 14, 1988, plaintiff's husband was a ticketed passenger on Eastern's Flight No. 208 from Miami to New York. Plaintiff's husband died during this flight. The ticket on which he was travelling provided for round trip transportation between Jamaica and New York, with an agreed stopping place in Miami.

Plaintiff filed a negligence action under state law against Eastern in New York state court, alleging, *inter alia*, that Eastern had a duty not to board passengers potentially not physically able to fly and a duty to render aid, assistance, and care to ill and infirm passengers on their flights, and that Eastern failed to discharge these duties properly as to her husband. Plaintiff's complaint alleges a total of $11 million in damages. Eastern removed the action to this Court on the basis of diversity of citizenship, pursuant to the removal provisions of 28 U.S.C. § 1441.

Plaintiff claims that her husband had a congenital asthmatic condition and that, after flying from Jamaica and having a stopover at Miami International Airport but before embarking on the Eastern flight to New York, he experienced an asthmatic attack. Plaintiff contends that Eastern was negligent in allowing her husband to board the plane and in not providing him with adequate care after boarding, and that Eastern's actions aggravated her husband's preexisting condition and contributed to his death.

Eastern denied the allegations of negligence, and has now moved for summary judgment pursuant to Fed.R.Civ.P. 56(c). Eastern contends that because plaintiff's husband was travelling on a ticket that provided for round trip transportation between Jamaica and the United States, the Warsaw Convention [1] applies to this case. Eastern's argument is that all claims against an air carrier by a passenger arising out of an international flight are governed by the Warsaw Convention; that the Convention preempts any such state law claims; that the Convention does not provide for liability of an air carrier for death or injury to a passenger not resulting from an accident; and, because plaintiff's husband died of "natural" causes and not from an accident, plaintiff's action must be dismissed.

In response to Eastern's summary judgment motion, plaintiff disputes the applicability of the Warsaw Convention to her negligence action. Plaintiff argues that because her husband's death was not caused by an accident as contemplated by the Warsaw Convention, the Convention is totally inapplicable, and does not preempt her state law claim.

### Discussion

I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party

---

**1.** The Warsaw Convention is the popularly used name for the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), note following 49 U.S.C.App. § 1502.

against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property, etc.*, 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)).

The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107 (2d Cir.), *cert. denied*, 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2553; *see also Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989).

Once a motion for summary judgment is properly made, however, the burden then shifts to the non-moving party, which "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (emphasis in original). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 and *Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)); *see also Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991). "The nonmovant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.'" *Western World Insurance Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting *Borthwick v. First Georgetown Securities, Inc.*, 892 F.2d 178, 181 (2d Cir.1989) and *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

II. Applicability of the Warsaw Convention

A. *Background of the Warsaw Convention*

In *In re Air Disaster at Lockerbie*, 928 F.2d 1267 (2d Cir.1991), *petition for cert. filed* (Aug. 12, 1991), the Second Circuit had the opportunity to review the history and purposes of the Warsaw Convention:

The Warsaw Convention was drafted when the airline industry was in its infancy. It was the product of two international conferences.... The Convention had two primary goals: first, to establish uniformity in the aviation industry with regard to "the procedure for dealing with claims arising out of international transportation and the substantive law applicable to such claims," as well as with regard to documentation such as tickets and waybills; second— clearly the overriding purpose—to limit air carriers' potential liability in the event of accidents.

*Id.* at 1270 (citations omitted). The American translation of Article 17 of the Warsaw Convention provides that

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Article 24 provides that in "cases covered by article 17," any action for damages "can only be brought subject to the conditions and limits set out in this convention." Article 22 places limits on air carriers' liability in the transportation of passengers and cargo, and Article 25 provides that a carrier cannot avail itself of these limitations on liability if damage is caused by "willful misconduct."

## B. *Warsaw Convention Preemption of State Law*

■ "[A]s a treaty, the Warsaw Convention is the Supreme Law of the Land" under the Supremacy Clause of Article VI of the United States Constitution. *In re Air Disaster at Lockerbie*, 928 F.2d 1267, 1278 (2d Cir.1991), *petition for cert. filed* (Aug. 12, 1991). There are several routes by which federal law may preempt state law. A state law that directly conflicts with federal law so that compliance with both is an absolute physical impossibility is preempted by federal law. *Wisconsin Public Intervenor v. Mortier*, ⸺ U.S. ⸺, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532 (1991). Preemption may also be found when Congress expressly preempts state law, when Congress enacts a scheme of federal legislation so pervasive that a court may infer that Congress left no room for states to legislate in the area, or when the subject matter "demands uniformity vital to national interests such that allowing state regulation 'would create potential frustration of national purposes.' " *In re Air Disaster at Lockerbie*, 928 F.2d at 1275 (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959)). There is, however, "a general presumption against finding preemption of state law." *Id.* at 1278 (citing *Motor Vehicle Manufac-*

*turers Association of United States, Inc. v. Abrams*, 899 F.2d 1315, 1319 (2d Cir. 1990)).

The language of Article 17 of the Warsaw Convention—"if the accident which caused the damage so sustained"—makes it clear that Article 17 covers a carrier's liability for death or bodily injury to a passenger caused by an "accident," but does not cover cases of death or bodily injury that do not arise from accidents in air travel. No other provision of the Warsaw Convention covers carrier liability for death or bodily injury to passengers in situations not involving accidents.

Both plaintiff and Eastern agree that Eastern is not liable to plaintiff for the death of her husband under Article 17, because no "accident" took place. What the parties disagree on is the conclusion to be drawn from this point. Plaintiff argues that because her claim is not covered by Article 17 or any other provision of the Warsaw Convention, her claim is not preempted and should not be dismissed. Eastern, on the other hand, argues that because plaintiff's husband was travelling on a ticket providing for international air transportation, the Warsaw Convention preempts any cause of action plaintiff might have under state law; and, because the Warsaw Convention provides for carrier liability for passenger death only in the event of an "accident," and not in other circumstances, plaintiff's claim should be dismissed.

The Supreme Court has twice expressly declined to answer the question of whether state law causes of action may go forward if the Warsaw Convention liability rules do not apply. *See Eastern Airlines, Inc. v. Floyd*, ⸺ U.S. ⸺, 111 S.Ct. 1489, 1502, 113 L.Ed.2d 569 (1991); *Air France v. Saks*, 470 U.S. 392, 408, 105 S.Ct. 1338, 1346, 84 L.Ed.2d 289 (1985).

In *In re Air Disaster at Lockerbie, Scotland*, 928 F.2d 1267 (2d Cir.1991), *petition for cert. filed* (Aug. 12, 1991), a case on which Eastern mistakenly places great reliance in its motion for summary judgment, the Second Circuit was confronted with the question of "whether state causes of action

are preempted *when the state claim alleged falls within the scope of the Convention." Id.* at 1273 (emphasis added). The Court answered that question in the affirmative, holding that the Warsaw Convention "bars state wrongful death actions in cases arising under it," and, because punitive damage awards are inconsistent with the purposes of the Warsaw Convention, plaintiffs may not recover such damages under the provisions of the Convention itself. *Id.* at 1270. The Court found state wrongful death actions (including punitive damage awards) in cases arising under the Convention to be preempted because allowing state law claims would frustrate the purpose of uniformity in air carriers' liabilities in the event of accidents. At the same time, the Second Circuit emphasized that "when the claim does not arise under the Warsaw Convention," a plaintiff "plainly may institute" such a cause of action under state law. *Id.* at 1273. *See also id.* at 1274 ("the Convention should be interpreted as making all actions—*other than those not based on the Convention*—exclusive under it") (emphasis added).

■ Under the Second Circuit's *Lockerbie* analysis, the mere fact that a passenger was travelling on an international air flight does not mean that every claim the passenger might have against the air carrier for death or bodily injury is preempted by the Warsaw Convention; rather, only those claims that fall within the scope of the Convention are preempted. Article 17 governs an air carrier's liability for death or bodily injury of a passenger caused by an accident, but not for death or bodily injury not caused by an accident. *See Air France v. Saks,* 470 U.S. 392, 396, 105 S.Ct. 1338, 1340, 84 L.Ed.2d 289 (1985) (air carrier "is liable to a passenger under the terms of the Warsaw Convention only if a passenger proves that an 'accident' was the cause of her injury"). Because plaintiff's claim is not within the scope of the Warsaw Convention, plaintiff "plainly may institute" it against Eastern. *In re Air Disaster at Lockerbie,* 928 F.2d at 1273.

The Second Circuit's *Lockerbie* analysis is in accord with other decisions that have

concluded that claims against air carriers not covered by the Warsaw Convention are not preempted. In *Abramson v. Japan Airlines Co.,* 739 F.2d 130 (3d Cir.1984) (cited by the Second Circuit in *Lockerbie*), the facts of which are similar to the instant case, a passenger on an international flight suffered an attack from a preexisting condition, paraesophageal hiatal hernia. The passenger sued the air carrier, alleging that the negligent conduct of the carrier and its employees aggravated the preexisting condition, which worsened the effects of the attack and ultimately required surgery. The passenger sued under both the Warsaw Convention and state law.

The Third Circuit found that no "accident" had occurred, thereby making the Warsaw Convention inapplicable, and affirmed the district court's grant of summary judgment against the passenger on the Warsaw Convention claim. The Third Circuit did, however, vacate the district court's grant of summary judgment against the passenger on the state law claims, concluding that the Warsaw Convention does not exclusively govern claims brought by passengers against air carriers arising out of international flights, and that when the Convention does not apply, state law claims may be instituted against an air carrier.

Similarly, in *Husserl v. Swiss Air Transport Co.,* 351 F.Supp. 702 (S.D.N.Y.1972), *aff'd,* 485 F.2d 1240 (2d Cir.1973), the Court stated:

> [T]he Convention does not "exclusively regulate" the relationship between passenger and carrier on an international flight, but rather sets limits on and renders uniform *certain of the aspects of that relationship ....* [I]f the Convention "applies," it applies to limit—not eliminate—liability; *if it does not apply, it leaves liability to be established according to traditional common law rules.*

*Id.* at 706 (emphasis added).

■ Eastern has not provided this Court with any decision, nor is the Court aware of any, in which a court found a claim against an air carrier for death or bodily

injury not arising out of an accident to be preempted by the Warsaw Convention. The overwhelming consensus of the courts that have addressed the issue is that an airline passenger may institute a claim under state law for death or injury sustained on an international flight when an accident is not involved. As the Third Circuit noted in *Abramson:*

> All the other courts considering this issue have similarly concluded that the Warsaw Convention's limitation and theory of liability is exclusive when it applies (*i.e.,* when there is an accident), but it does not preclude alternative theories of recovery. . . .
>
> Other courts, after finding the Warsaw Convention inapplicable, have permitted maintenance of claims brought on other grounds.

739 F.2d at 134 (collecting cases). Plaintiff's negligence action under state law is therefore not preempted by the Warsaw Convention.

### III. Summary Judgment as to Plaintiff's Negligence Action

■ Because the Warsaw Convention does not preempt plaintiff's state law claim, the Court must next evaluate whether Eastern has shown, in moving for summary judgment, "that there is no genuine issue as to any material fact and that [Eastern] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Eastern has devoted nearly all of the argument in its summary judgment motion papers to the issue of preemption. Eastern has pointed to only the undisputed fact that plaintiff's husband died of "natural" causes, according to the Certificate of Death and Autopsy Report.[2] The undisputed fact that plaintiff's husband died of "natural" causes does not, however, answer the question of whether Eastern is entitled to summary judgment. Plaintiff alleges that Eastern and its employees, through their actions (or inaction), aggravated her husband's preexisting condition and contributed to his death on the plane.

Plaintiff's claim against Eastern is for negligence under New York law, and may turn on such issues as, *inter alia,* the duty of care Eastern and its employees owed plaintiff's husband, whether that duty was breached, and the causal connection between the actions (or inaction) of Eastern and its employees and plaintiff's husband's death. *See, e.g., Febesh v. Elcejay Inn Corp.,* 157 A.D.2d 102, 555 N.Y.S.2d 46 (1st Dep't 1990). Also, as a common carrier, Eastern's liability may depend upon what its employees knew or should have known regarding plaintiff's husband's condition. *See, e.g., O'Leary v. American Airlines,* 100 A.D.2d 959, 960–61, 475 N.Y.S.2d 285, 288 (2d Dep't 1984).

Plaintiff's claim therefore involves a number of fact-specific questions that will affect the outcome of her suit and are properly to be determined by a jury. "Negligence cases by their very nature do not usually lend themselves to summary judgment, since often, even if all parties are in agreement as to the underlying facts, the very question of negligence is itself a question for jury determination." *Ugarriza v. Schmieder,* 46 N.Y.2d 471, 474, 386 N.E.2d 1324, 1325, 414 N.Y.S.2d 304, 305 (1979).

In addition, plaintiff has demonstrated the existence of "disputes over facts that might affect the outcome of the suit under the governing law," which "preclude[s] the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

---

**2.** Eastern has provided the Court with plaintiff's husband's Certificate of Death, issued Sept. 7, 1988 by the Bureau of Vital Records, Department of Health, City of New York. The Certificate of Death states that the cause of death was "[s]tatus asthmaticus with mucus plugging of bronchial tree" and that the "Manner of Death" was "Natural." Eastern has also provided a copy of the Autopsy Report from the Office of the Chief Medical Examiner, New York City, performed by Dr. Yong–Myun Rho on July 15, 1988. The Autopsy Report similarly states: "CAUSE OF DEATH: STATUS ASTHMATICUS WITH MUCUS PLUGGING OF BRONCHIAL TREE. NATURAL." Plaintiff does not dispute that her husband died of "natural" causes, and not by an "accident." Affidavit of John A. Fisher, Esq., attorney for plaintiff, sworn to on May 2, 1991, ¶¶ 5, 8.

**117**

For example, in her answers to interrogatories, plaintiff identifies witnesses to the series of events leading up to the death of her husband, one of whom was interviewed and made statements that call into question the actions (or inaction) of Eastern's employees on the flight.[3] Plaintiff has therefore shown that genuine disputes as to material issues of fact do exist, and are sufficient to preclude granting summary judgment in favor of Eastern.

### Conclusion

For the reasons set forth above, Eastern's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is denied.

SO ORDERED.

---

3. Plaintiff's Answer to "Interrogatories Set One," Sept. 24, 1990; Witness Statement of Marjorie

Kennedy, Interviewed on Dec. 29, 1988, by Private Investigator Stephen M. Interlicchio.