**TUNIS BROTHERS COMPANY, INC.**

v.

**FORD MOTOR COMPANY, Ford Motor Credit Company, and Wenner Ford Tractor, Inc.**

Civ. A. No. 82–5557.

United States District Court,
E.D. Pennsylvania.

Jan. 6, 1989.

Arnold R. Ginsburg, Haverford, Pa., for plaintiff.

Robert C. Heim, Philadelphia, Pa., for Ford Motor Co. and Ford Motor Credit Co.

Steven T. Stern, Philadelphia, Pa., for Wenner Ford Tractor, Inc.

MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is the motion of the defendant to preclude the testimony being proffered by the plaintiff at this trial. This case was originally filed in 1982 and a history of it, as well as the underlying facts in the case, many of which bear upon the present matter before the court, have previously been reported in the following cases: *Tunis Bros. Co., Inc. v. Ford Motor Co.* ("Tunis I"), 763 F.2d 1482 (3d Cir.1985); *Tunis Bros. Co., Inc. v. Ford Motor Co.,* 587 F.Supp. 267 (E.D.Pa.1984).

I. BACKGROUND

The trial in this matter began on November 14, 1988, and the damage issues were bifurcated from the liability issues at the request of the plaintiff. The court and jury heard the testimony on liability and on December 16, 1988, the jury returned its verdict in favor of the plaintiff and against

most of the defendants, some of them having been dismissed by the court at the conclusion of all of the evidence in accordance with the provisions of Fed.R.Civ.P. 50.

The court filed its original pre-trial scheduling Order in accordance with Fed.R. Civ.P. 16 on March 11, 1983. The court amended that Order on May 5, 1988, and provided for the filing of pre-trial memoranda on July 1, 1988. Both the original pre-trial Order of March 11, 1983, and its amendment on May 5, 1988, provided a date that each of the parties was to furnish to every other party the curriculum vitae for each expert witness expected to testify at the trial. The original deadline was July 15, 1983, and the later deadline was July 1, 1988. Up until December 15, 1988, the plaintiff had identified Mr. Morton Oxman, the certified public accountant for Tunis Bros., as its principal witness who was to furnish expert testimony on damages. Plaintiff now seeks to call as an expert witness an economist, Dr. Samuel J. Kursh, who wishes to testify in accordance with an offer of proof[1] required by the court and filed by the plaintiff for the first time on December 20, 1988, in the second supplement to plaintiff's pre-trial memorandum concerning the damage portion of the trial. Previously, on December 15, 1988, the plaintiff did supplement its pre-trial memorandum by naming Dr. Kursh and setting forth his qualifications, but that supplement did not provide any offer of proof describing the subject matter of his testimony. The court advised counsel for the plaintiff that until an offer of proof was filed with the court, the court would not consider the amendment to the pre-trial memorandum.

The discovery, including the right to seek answers to trial expert opinions, has been closed primarily since 1983 and, with the exception of certain supplements and additions, certainly since 1984. Defendant, Ford Motor Company, sought and received the responses to Rule 26 expert interrogatories from the plaintiff in 1983 in the form of detailed estimates and calculations by Mr. Oxman, and it is upon those very figures that Mr. Oxman currently relies and is expected to offer testimony at the trial. The defendants have argued that they have developed a defense based on those calculations and conclusions by Mr. Oxman, and that they are prepared to offer their witnesses to the jury in the expectation that the jury will not accept Mr. Oxman's opinions concerning damages in this case. Mr. Oxman has calculated in this antitrust case a figure for alleged economic loss based on loss of gross profits on equipment sales, lost gross profits on hardware and other merchandise sales, and the diminution of value of Tunis Brothers Company, Inc. as a going concern. The loss calculation prepared by Mr. Oxman, based upon original documents and records and information gathered by him by reason of his association with the plaintiff since 1981, is $7,724,-357.00. The defendants contend they are prepared to defend against this with their own witnesses who will address the various ingredients and elements of Mr. Oxman's calculations.

The offer of proof dated December 19, 1988, provided by Dr. Kursh contains a number of calculations based upon the same facts, figures, and raw data relied upon by Mr. Oxman. However, Dr. Kursh arrives at several conclusions that at best, from Mr. Oxman's viewpoint, suggest that his figures are conservative and at worst, from Mr. Oxman's viewpoint, suggest that he underestimated the economic inter-dependence of hardware sales with the Ford tractor franchise conducted by the plaintiff in Kennett Square, Pennsylvania. Dr. Kursh suggests that, to the extent that there has been an underestimation by Mr. Oxman, the damage amount is understated.

The defendants object to this proffer on a number of grounds. The principal objection is that Dr. Kursh has been identified much too late in the proceedings to allow the defendants to respond effectively.

---

1. The method by which the plaintiff has provided an offer of proof of this expert witness is by attaching to the second supplement to plaintiff's pre-trial memorandum of December 20, 1988, a letter dated December 19, 1988, signed by Dr. Kursh and providing essentially the testimony he expects to offer.

They further argue that the testimony, to the extent that it is new and different, is based on facts that have existed since 1982. Accordingly, the expert testimony could, and should, have been developed sometime between the original July 1983 deadline and a time before trial when the defendants could reasonably be expected to prepare a response to plaintiff's case as well as develop their own theories concerning Dr. Kursh's testimony. Defendants finally contend that the extent to which Dr. Kursh's testimony is offered merely to buttress Mr. Oxman, it is cumulative, and should not be received on that ground.

Plaintiff responds that Dr. Kursh will not introduce any "new" testimony but will simply present his interpretation of Mr. Oxman's calculations from the perspective of an economist rather than an accountant. Plaintiff argues that since this testimony focuses upon Mr. Oxman's original figures, any prejudice inuring to defendants under Fed.R.Evid. 403 is outweighed by plaintiff's need to introduce this testimony under Fed. R.Evid. 702. Lastly, plaintiff claims that a three week hiatus in the damages trial has been sufficient to cure any prejudice caused by plaintiff's untimely disclosure of Dr. Kursh.

## II.  DISCUSSION

The issue of Dr. Kursch's testimony as an expert on behalf of Tunis Brothers is governed by Fed.R.Civ.P. 26(e)(1)(B). In *Meyers v. Pennypack Woods*, 559 F.2d 894, 904–05 (3d Cir.1977), *overruled on other grounds, Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir.1985), *aff'd*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), the Third Circuit set forth the factors to be considered in excluding an expert witness:

1.  The prejudice or surprise in fact of the party against whom the excluded witnesses would have testified;

2.  The ability of that party to cure the prejudice;

3.  The extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and

4.  Bad faith or willfulness in failing to comply with the court's order.

*See also Semper v. Santos*, 845 F.2d 1233, 1237–38 (3d Cir.1985); *Tabatchnick v. G.D. Searle & Co.*, 67 F.R.D. 49 (D.N.J.1975).

■ Plaintiff's failure to list Dr. Kursh as an expert witness prior to its supplemental pre-trial memorandum dated December 20, 1988, violates Fed.R.Civ.P. 26(e)(1)(B), as well as the court's original pretrial Order and the May 5, 1988 pre-trial Order governing the current trial. Rule 26(e)(1)(B) requires a party to supplement responses to discovery by mandating the disclosure of the identity of each new or additional person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony. Apparently the plaintiff has been discussing this matter with Dr. Kursh for some months, but it was not until December 20, 1988 that the substance of his opinions and the subject upon which he was expected to testify was first disclosed.[2] Critical to this observation is the fact that Mr. Oxman has already testified as an expert in the liability portion of the trial and was extensively cross-examined by the defendants' attorneys. At the time of that cross-examination, defendants were not aware that some of his estimates were criticized by Dr. Kursh. Had the defen-

2.  Plaintiff has contended that it only decided to hire Dr. Kursh within the last two or three months because it could not afford to pay his fees. At the argument on this motion, the court learned that the original fee of $8,000.00 was reduced to $3,000.00, $1,500.00 of which has already been paid. The court stated that it would not rule on this feature of the plaintiff's argument until it received additional information as to the ability of the plaintiff to have paid a greater sum for this testimony at an earlier time. By letter to the court dated January 4, 1988, plaintiff has withdrawn this argument in support of its proffer. However, the court believes that plaintiff's inability to pay Dr. Kursh's fee is not a significant factor in the resolution of this issue. The dispositive factor remains the prejudice which defendants will suffer if Dr. Kursh is permitted to testify. The reason for plaintiff's delay is ancillary for purposes of this motion.

dants been aware of Dr. Kursh's expected testimony, they may have considered using that information in the cross-examination of Mr. Oxman. In addition, the jury has already found for the plaintiff and presumably has relied to some extent on Mr. Oxman's testimony. Moreover, the damage trial has opened. Ford Motor Company, through its counsel, has made its opening statement to the jury without any reference to Dr. Kursh or his conclusions. Counsel for Wenner Ford Tractor, Inc. has postponed providing his opening until the completion of the plaintiff's case. Both defense counsel may have made different decisions concerning their opening statements if they had known Dr. Kursh was to appear and had a notion of the testimony that he was expected to furnish. That opening statement could have focused on possible weaknesses in Mr. Oxman's testimony or on expected positive features in Dr. Kursh's testimony. Finally, defendants have countered the plaintiff's expert CPA witness with their own expert CPA witness and presumably have tailored their case principally along these lines. To allow Dr. Kursh to testify at this juncture would require defendants to depose Dr. Kursh, retain their own expert witness and realign their defense accordingly. After six years of discovery based on a set of unchanged facts, the court finds that such a course of action will be unduly prejudicial and patently unfair.

■ The court further finds that the prejudice to plaintiff in excluding Dr. Kursh's testimony is minimal since the same calculations and theory of damages will be presented to the jury through Mr. Oxman. The difficulty here is that the plaintiff's position concerning this proffer, as to whether it is merely cumulative or whether it is new testimony, is mixed, being confusing at worst and ambiguous at best. At argument plaintiff contended that the testimony was not new, yet other features of plaintiff's argument suggest that the material will be new, especially to the extent that it disagrees with Mr. Oxman. It seems to the court that there are three possibilities here. First, if Dr. Kursh is simply going to vouch for Mr. Oxman and

the soundness of his opinions, such testimony would appear to be inappropriate. It will be up to the jury to determine the reliability of Mr. Oxman. Merely to have partisan experts appear to vouch for previous experts violates Fed.R.Evid. 403 and would needlessly present cumulative evidence, waste time, and mislead the jury. It is the jury's function to determine the validity of Mr. Oxman's opinions and not to judge Dr. Kursh's opinions of Mr. Oxman's opinions. The second possibility is that Dr. Kursh will simply track Mr. Oxman's testimony. If he is simply going to restate the testimony, that also would violate Rule 403 in that it would be merely cumulative. Thirdly, if Dr. Kursh's testimony is to provide new and different opinions and material, then it is the view of the court that it is plainly prejudicial to the defendants in that it comes far too late in the proceeding to allow the defendants to defend effectively against it, to offer testimony in opposition, or to rely upon their existing defense that has, since 1983, focused upon Mr. Oxman and his calculation of damages. It is difficult to assess the reach of this prejudice that could result from allowing this expert to testify. Some weeks ago the court encouraged some settlement discussions in this case. The defendants' position, whatever it was, could not have taken into consideration Dr. Kursh's proffered opinions to the extent that they are new. The offering of defense witnesses in the liability case, as well as the cross-examination of Mr. Oxman and even the plaintiff itself, could have taken an entirely different tack if it was contemplated that Dr. Kursh's opinions would ultimately be received. Opening statements have already been made, and presumably defense strategy is now in place.

### III. CONCLUSION

The court concludes that upon consideration of the motion, the briefs, and oral argument, that it would be manifestly unjust to allow Dr. Kursh to appear and testify.

The motion to preclude will be granted.

An appropriate Order will be entered.