PERKASIE INDUSTRIES
CORP., Plaintiff,

v.

ADVANCE TRANSFORMER,
INC., Defendant.

Civ. A. No. 90–7359.

United States District Court,
E.D. Pennsylvania.

June 11, 1992.

Don P. Foster, Rubin, Quinn, Moss, Heaney & Patterson, Steven A. Asher, Kohn, Savett, Klein & Graf, P.C., Joan F. Jaffe, Rubin, Quinn, Moses & Heaney, Philadelphia, Pa., for Perkasie Industries Corp.

Richard F. Mc Menamin, Joseph B.G. Fay, Mark P. Edwards, Morgan, Lewis & Bockius, Patrick W. Kittredge, Kittredge, Donley, Elson, Fullem & Embick, Philadelphia, Pa., for Advance Transformer, Inc.

Michael N. Onufrak, White and Williams, Philadelphia, Pa., for Simkar Lighting Co.

Barry M. Klayman, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for Keystone Lighting Corp.

Chaim T. Kiffel, Kirkland & Ellis, Chicago, Ill., Joseph A. Mc Ginley, George J. Lavin, Jr., Assoc., Philadelphia, Pa., for Magnetek, Inc./Universal Mfg.

## MEMORANDUM

McGLYNN, District Judge.

Presently before the court is a motion by the defendant, Advance Transformer, Inc. ("Advance"), requesting a protective order that would strike plaintiff Perkasie Industries Corp.'s ("Perkasie") supplemental responses to defendant's expert witness interrogatories. Perkasie's supplemental responses identified three expert witnesses upon whose testimony it is prepared to rely to establish its damages in this case. Advance maintains that these witnesses should be precluded from testifying at trial due to Perkasie's failure to comply with the court's pre-trial scheduling order. For the reasons set forth below, Advance's motion will be granted.

## BACKGROUND

The defendant's motion arises from an antitrust suit brought by Perkasie against Advance under § 2(a) of the Robinson–Patman Act. 15 U.S.C. § 13(a) (1970). Perkasie purchased from Advance transformers which control the flow of electricity in lighting fixtures. Perkasie then assembled them into fluorescent lighting fixtures which it sold to retail outlets and electrical distributors. In its complaint, Perkasie alleged, *inter alia*, that Advance granted favorable pricing on transformers to Perkasie's competitors, thereby preventing Perkasie from competing effectively and forcing it to abandon the manufacture of their product.

After this suit commenced the court filed a pre-trial scheduling order dated December 23, 1991. The order directed that discovery be completed by March 15, 1992, set a trial date of June 1, 1992, and required that Perkasie's expert damages report be submitted by January 15, 1992. A subsequent court order extended the date for completion of discovery to April 15, 1992, and the trial date to June 18, 1992, but without adjustment of the date for submission of Perkasie's expert damages report.

Until March 23, 1992, Perkasie had designated only Mr. Thomas Giedgowd, an accountant with Stockton, Bates & Co., as an expert witness who would offer an opinion on damages in this case. Perkasie had retained Mr. Giedgowd in the belief that he would be able to fully and accurately quantify its' damages. (Pl.'s Mem. in Opp'n at 2). Mr. Giedgowd prepared three expert reports in which he calculated Perkasie's losses based on the differential between the price which Perkasie paid for Advance's transformers and the price which Perkasie would have paid in the absence of the alleged price discrimination. By multiplying that differential by the number of sales which Perkasie actually made and the number of sales which it would have made in a discrimination-free environment, Mr. Giedgowd arrived at a lost gross sales figure of approximately $465,000 for the years 1986 through 1990.

Perkasie submitted Mr. Giedgowd's three reports to Advance on January 15, January 27, and February 14, respectively. Additionally, when responding to Advance's ex-

pert witness interrogatories submitted under Federal Rule of Civil Procedure 26(b)(4)(A), Perkasie identified these reports as "containing the substance of its expert's opinion testimony and as constituting those documents which evidence, concern, refer, or relate to Plaintiff's alleged damages." (Def.'s Mot., App., Ex.'s C & D).

Having received the last two of Mr. Giedgowd's reports after the January 15 deadline, Advance filed a motion asking that Perkasie be precluded from utilizing the reports filed on January 27 and February 14. On February 26, 1992, the court denied Advance's motion subject to Mr. Giedgowd's being made available for deposition. Counsel for Advance then deposed Mr. Giedgowd on March 5, 6, and 9. Meanwhile, Advance retained an accountant as its expert witness to prepare a rebuttal to Mr. Giedgowd's reports. However, on March 23, Perkasie served defendant with supplemental answers to its interrogatories in which it identified three new expert witnesses, *viz.*, Drs. Samuel Kursh, Brian Sullivan, and Edward Friedman, all economists from the Center for Forensic Economic Studies (CFE). On April 1, 1992, Perkasie served counsel for Advance a copy of its latest expert report as prepared by the aforementioned economists identified in the supplemental response. This report calculated Perkasie's damages at nearly double the figure estimated by Mr. Giedgowd.

Perkasie asserts that it requires the CFE analysis in order to quantify the impact of Advance's alleged discrimination on Perkasie's ability to expand its share of the lighting fixture market. The resulting lost sales, Perkasie argues, are an integral part of its damages claim and are recoverable under the antitrust laws. Because Mr. Giedgowd is an accountant and not an economist, he was unable to project level of sales Perkasie would have realized through expansion in a discrimination-free environment. In order to do so, it became necessary to hire an economist.

In its motion, Advance opposes the supplemental responses on two grounds. First, the introduction of additional expert reports violates the court's pre-trial scheduling order of December 23. Second, Advance asserts that it will suffer undue prejudice if their motion is denied. Having prepared to rebut Perkasie's damages claim on the basis of Mr. Giedgowd's reports and his deposition, Advance will now be forced to depose the three new experts, retain their own economist to rebut the opinions offered by these witnesses, and realign their defense strategy accordingly. The trial is now scheduled for June 23, 1992. Advance argues that there is too little time remaining before trial to effectively meet this unexpected burden. Therefore, Advance demands that the report of the new experts be stricken and the three witnesses precluded from testifying at trial.

DISCUSSION

 The exclusion of otherwise admissible expert witness testimony for failure to meet the timing requirements of a court order is an extreme measure. A pre-trial scheduling order is not intended to be a straightjacket restricting complete exploration of a party's claims. It is, however, an important tool for the court's effective management of a complex case. The court's ability to exclude undisclosed witnesses in compliance with a pretrial order is essential to avoid unnecessary expense or delay. Therefore, the issue is to be resolved at the discretion of the trial judge. *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201 (3d Cir.1978).

 The Third Circuit Court of Appeals has identified four factors a trial court should consider when excluding witnesses who are not identified timely. These factors are: (1) bad faith or willfulness in failing to comply with the court's order; (2) prejudice or surprise of the party against whom the evidence is directed; (3) the ability of that party to cure the prejudice; and (4) the potential disruption of the ordinary trial of the case or other cases in court. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir.1985).

In reference to the first factor, the court notes the conspicuous absence of an explanation by Perkasie for its failure to comply with the court's December 23rd order. That order required Perkasie to submit its expert damages report on January 15, 1992. Perkasie had first identified Mr. Giedgowd's firm, Stockton, Bates & Co., as a potential expert witness on November 1, 1991 in response to defendant's first set of interrogatories. Yet, Perkasie, without offering an excuse, was unable to complete service of Mr. Giedgowd's report until a month after the scheduled cut-off date and three and one-half months after its answer to Advance's first set of interrogatories. At no time in the interim did Perkasie request relief from the January 15 deadline. Even at this late date, however, Perkasie apparently intends to submit further reports prepared by the three CFE economists who will serve as expert witnesses. The report served by Perkasie on Advance on April 1, 1992 describes itself as only a *"Preliminary* Assessment of Economic Loss" (emphasis added) with acquisition of further data required before completion. Overall, these facts evidence disregard for the scheduling order to which both parties had agreed on December 23, 1991.

Perkasie argues that the CFE report is essential to supplement the damages theory presented by Mr. Giedgowd. Because Mr. Giedgowd is an accountant rather than an economist, he was unable to analyze Perkasie's losses from its inability to expand its market size. The court is satisfied, however, that Perkasie had ample time, both before and after the December 23rd order, to discover the weaknesses or deficiencies in Mr. Giedgowd's analysis.

Plaintiff's counsel has not demonstrated that the issues referred to in the CFE report were not or could not have been apparent well before the expiration of the court's deadline. Furthermore, since Perkasie must have been aware of the limitations of Mr. Giedgowd's projections, it should have sought the assistance of other economic experts earlier in the investigation. Instead, it was only on March 9, 1992, coincidentally the last day of Mr. Giedgowd's deposition, that counsel for Perkasie met with Drs. Sullivan and Friedman and requested their analyses. (Pl.'s Mem. in Opp'n at 3).

 To allow these experts to testify would unquestionably prejudice Advance in its preparations to meet Perkasie's damages claims. Perkasie never expressed an intention to submit expert reports other than those prepared by Mr. Giedgowd. Advance therefore retained their own accountant in order to rebut Mr. Giedgowd's analysis. At the present point in the proceedings, by serving the report prepared by the three CFE economists and identifying them as expert witnesses, Perkasie has introduced a new methodology and a new theory of damages into the case. Due to lack of adequate notice, defendant runs the risk of being unable to effectively anticipate the approach taken by Perkasie's experts or the data on which they will base their opinion at trial. The Federal Rules of Civil Procedure require that advance notice be given of the names of a party's experts and the substance of their testimony in order to avoid this type of prejudice. Fed.R.Civ.P. Rule 26, advisory committee's notes on 1966 amendments.[1] A party is not permit-

---

1. Federal Rule of Civil Procedure 26(b)(4) "Trial Preparation: Experts" requires that:

Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify and a summary of the grounds for each opinion....

Rule 26(e) "Supplementation of Responses" states that:

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement the response with respect to any question directly addressed to.... (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony.

ted to postpone identification of its own witnesses and the substance of their testimony until a critical point in the proceedings at which it will become extremely burdensome for his opponent to prepare effectively to meet them. *See Ferrara v. Balistreri & DiMaio Inc.*, 105 F.R.D. 147, 150 (D.Mass.1985).

The third factor the court considers is the ability of Advance to remove the prejudice. In order to prepare effectively for trial, Advance will have to depose all three of plaintiff's new experts, retain its own economic expert, and realign its defense strategy accordingly. To impose these added burdens when defendant's preparation for the approaching trial will be absorbing all of its time and resources would be unduly prejudicial and patently unfair, especially when the opposing party has offered no valid justification for ignoring the court's deadline. *Central Maine Power Co. v. Foster Wheeler Corp.*, 115 F.R.D. 295, 298 (D.Me.1987); *see also Tunis Bros. Co. v. Ford Motor Co.*, 124 F.R.D. 95, 97 (E.D.Pa.1989).

The only alternative would be for the court to order a continuance, allowing Advance additional time to prepare its case and to dispel the prejudice. The court does not feel compelled to do so. The court is not required to mechanically grant such postponements in the absence of a showing of good cause, lest its orders be regularly disregarded. *Central Maine Power Co.*, 115 F.R.D. at 298–99. In addition, the court sees no reason to reward the party who causes the prejudice without good cause while the opposing party has conscientiously complied with its scheduling responsibilities.

CONCLUSION

If Perkasie is permitted to utilize the untimely expert reports submitted by the three CFE economists, Advance will be unduly prejudiced in preparing to meet their expert testimony in the approaching trial. Therefore, Perkasie will not be prepared to utilize expert reports prepared by The Center for Forensic Economic Studies and is precluded from offering the testimony of Drs. Kursh, Sullivan, and Friedman at trial.