**Stanley ABRAMSON, Plaintiff,**

v.

**JAPAN AIR LINES, Defendant.**

**Civ. No. 82–4374.***

United States District Court,
D. New Jersey.

Sept. 26, 1983.

On Motion to Alter or Amend Judgment
Oct. 11, 1983.

---

* Affirmed in part, reversed in part and vacated and remanded for further proceedings, 739 F.2d

130 CA–3, 1984.

Peckar & Abramson by Bruce D. Meller, Hackensack, N.J., for plaintiff.

Durand, Gorman, Heher, Imbriaco & Lynes by Charles J. Hayden, Newark, N.J., and Condon & Forsyth, New York City, of counsel, for defendant.

## MEMORANDUM

BIUNNO, Senior District Judge.

This is a suit for personal injury claimed to have been sustained by the plaintiff while a passenger on one of defendant's aircraft on a commercial flight that had left Kennedy Airport in New York, flown to Anchorage, Alaska, and had left there headed for Tokyo, Japan. There were to be later stops down to Hong Kong and eventual return to New York. The ticket for the flight was evidently part of a tour organized by ABC Tours in Union, New Jersey.

It comes before the court on defendant's motion to dismiss the complaint for failure to state a claim, Rule 12(b)(6), and in the alternative for a partial summary judgment that defendant's liability is limited to $75,-000 under the Warsaw Convention as modified by the Montreal Agreement and tariffs for international flights for which a point in the United States is a point of origin, destination, or agreed stopping place.

The factual account, which appears from the deposition testimony of plaintiff and his wife is brief and obviously not in dispute. They had purchased tickets for an air tour to the Far East, with Japan Airlines as the air carrier. They left from Kennedy on a non-stop flight of some 6.5 to 7 hours, to Anchorage, Alaska, where they stayed perhaps an hour. The plane then left for the remaining hop to Tokyo, Japan, the first tour stop.

About a half-hour to one-hour after take-off from Alaska, plaintiff began to feel a discomfort which he attributes to a hiatus hernia which had developed some 5 or 6 years back, and which had been managed by avoiding spices and the like, by taking digestive aids such as Maalox, but which had occasionally "acted up" with no discernable pattern. Except for one instance, in June of the year before, he had managed each episode by moving about, lying down, getting up a bubble of "gas", and, on occasion deliberately causing himself to vomit. The exception in June of the year before was an occasion when these efforts resulted in some internal bleeding for which he was hospitalized and treated without surgery. He was told after that incident that surgery to repair the hernia should be considered on an elective basis.

On the flight, when his condition flared up, he was not able to achieve relief. His wife asked a stewardess if there was some place on the plane where plaintiff could lie down, but was told there was not because all seats were filled. He tried to lie down on the two seats he and his wife had, but the space was too narrow. He could not lie down in an aisle because passengers walking about could step on him. One or the other must have made some request, though neither recalls it, or perhaps it was radioed ahead as a precaution, but there was a wheelchair waiting for plaintiff at the airport in Tokyo. They were transported by bus with their baggage to their hotel, checked in, but plaintiff could not relieve his discomfort.

A physician was called and plaintiff was taken to a Tokyo hospital. After examination and treatment, it was recommended that the couple return to New York for medical treatment. This was done (at some extra expense as they had left their tour group), and surgery was performed to repair the hiatus hernia. There has been no recurrence since.

The complaint is in three counts. The first is grounded on negligence in failing to have a place on board the plane to lie down. The second asserts liability without fault under the Warsaw Convention. The third asserts wilfull and wanton conduct in failing to provide a space to lie down, as a basis for punitive damages.

Suit was filed in Superior Court of New Jersey and removed here for diversity jurisdiction, 28 U.S.C. § 1332.

A letter order by the Magistrate after a status conference in May directed that the purser on board the flight be made available for depositions; and that all fact discovery be completed by August 15, 1983. It required plaintiff's experts reports (if any) to be served no later than August 15th, and defendant's experts reports to be served not later than September 15th.

Another paragraph directed that the substantive law of New Jersey was to apply in the case unless one party or the other filed a motion returnable not later than July 15, 1983 to show why the substantive law of another jurisdiction should apply. There has been no such motion.

The motion to dismiss rests on matters outside the pleadings, such as plaintiff's airline ticket, his and his wife's deposition. The court considers these proof matters, and so is required by Rule 12(b) to treat the motion as one for summary judgment.

*Applicable law*

In the Second Circuit, the rule was laid down that a claim like the present one is for a federal cause of action under 28 U.S.C. § 1331 because it is created by the Warsaw Convention. *Benjamins v. British European Airways*, 572 F.2d 913 (CA–2, 1978), cert. den. 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72. On that principle, diversity of citizenship loses meaning, and the substantive law of the forum state would not be binding under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

In this Circuit, the U.S. Court of Appeals has noted the decision of the Second Circuit, but has not decided the point, *De Marines v. KLM, etc.*, 580 F.2d 1193 at pages 1200–1201 (CA–3, 1978).

The provisions of the Montreal Agreement carry the suggestion that substantive law of the forum State may be looked to in certain instances specified. For example the approved tariff allowing recovery up to US $75,000. includes legal fees and costs, except that in case of a claim brought in a State where provision is made for separate award of legal fees and costs, the limit shall be the sum of US $58,000 exclusive of legal fees and costs.

■ The Warsaw Convention is a treaty ratified by the United States. The Montreal Agreement draws force from the tariffs filed with and approved by the Civil Aeronautics Board, under federal law, and so both are part of the law of New Jersey, the forum State, by virtue of Art. VI of the U.S. Constitution as "the Supreme law of the land", which all judges are duty bound to apply, any law of the State to the contrary notwithstanding.

Thus, the matter may be looked at as a situation in which the law of the forum State has been modified by paramount law to some extent or other.

The closest analogy of recent years is that of the law of defamation. The substantive law on the subject is the law of the several States, yet, beginning with *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and continuing through *Gertz v. Welch*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the law of all the States has been modified by the provisions of the First Amendment, applied to the States through the Fourteenth. See *Prager v. American Broadcasting Co.*, 569 F.Supp. 1229 (D–N.J., 1983) *aff'd* 734 F.2d 7 (CA3 1984), and cases cited, particularly *Kotlikoff v. The Community News*, 89 N.J. 62, 444 A.2d 1086 (1982); *Maressa v. New Jersey Monthly*, 89 N.J. 176, 445 A.2d 376 (1982) and *Lawrence v. Bauer*, 89 N.J. 451, 446 A.2d 469 (1982), showing that New Jersey's highest court continues to treat defamation law as State law with the modifications imposed by paramount law, as integrated into it.

This structure is underscored by the recognized applicability of privilege rules of the forum State in respect to the media, see N.J.Ev. Rule 27 (1977) and N.J.S.A. 2A:84A–21.1 et seq. (1980). The Pennsylvania "shield law" was also applied in *Steaks Unlimited v. Deaner*, 623 F.2d 264 (CA–3, 1977).

Fed.Ev. Rule 501 carries no media shield law or privilege, but it does provide that in civil actions where State law supplies the rule of decision on an element of a claim or defense, the matter of privilege is determined by the State law. This confirms the nature of defamation law as being State law, modified to the extent that paramount law prevails and so becomes part of the tenor of the State law.

Since no motion was filed returnable not later than July 15, 1983 as the Magistrate's letter order required, the applicable law is taken as New Jersey law as modified by the paramount law of the Warsaw Convention and the federal tariff filed with and approved by the Civil Aeronautics Board.

*Conclusions*

*De Marines v. KLM, etc.*, 580 F.2d 1193 (CA–3, 1978), and *Warshaw v. Trans World Airlines*, 442 F.Supp. 400 (D–Pa, 1977) state so much of the applicable law as is pertinent here because, being part of the paramount law modifying and integrat-

ed into the local law of every State, it is necessarily uniform. Both are in agreement that under Article 17 of the Warsaw Convention, the cause of action against the air carrier was created and its nature, as modified by the tariffs under the Montreal Agreement, is one of a special absolute liability standard, subject to the US $75,000 limit, for injuries proximately caused by some "accident" on board the plane.

■ The *DeMarines* case lays down the law for this circuit that defines what an "accident" is in this sense. Applied here, the factual record utterly fails to show any kind of "accident", or to suggest that the flight, as such, was other than an uneventful flight.

■ The allegations of negligence, or of wilfull failure, etc., add nothing to the claim, the first because liability, when it exists, arises without regard to negligence and the second because it has meaning only to support punitive damages, which are not recoverable unless there is a right to recover compensatory damages. The absence of an "accident" precludes liability, both compensatory and punitive.

There is no fact question here, as there was in *DeMarines*, supra, about delivery of the ticket. The deposition testimony shows the ticket was delivered, and a photocopy expressly referring to the Warsaw Convention was an exhibit there and on this motion.

In sum, the plaintiff's deposition testimony, corroborated by his wife's, is that he boarded the international flight with the physiological defect of a hiatus hernia which, in his own experience, could "act up" into an acute condition of varying degrees of intensity wherever he was and under unpredictable conditions. There is nothing to suggest that anything on or about the flight had any proximate cause relation to the unfortunate experience that developed. He has been on many commercial flights since the condition first manifested itself, and it never flared up before during a flight. He informed no one at the airline of his hernia before boarding; he consulted no physician before going on the flight. No medical or other expert proof of any kind is presented to meet the motion tending to show any kind of factual basis for a jury to make a finding that there was an "accident", much less proximate cause.

An airline passenger may experience any of a countless number of painful occurrences while on a flight, which have nothing to do with where the person is at the time. A kidney stone can bring about the most excruciating and torturing discomfort even though never experienced before, anywhere, anytime. A gall bladder attack can occur without external cause or warning anytime, anywhere. So, also, with appendicitis. And so with many other human ills. The mere happening of one of these malfunctionings of the human organism on board a commercial airline flight governed by the Warsaw Convention and Montreal Agreement tariffs is not actionable unless an "accident" on the flight is the proximate cause.

There being no genuine issue on any material fact, and defendant being entitled to judgment as a matter of law, summary judgment will be entered against plaintiff and in favor of defendant.

## ON MOTION TO ALTER OR AMEND JUDGMENT

Defendant's motion for summary judgment had been noticed, and was called, for September 26, 1983. No papers of any kind were submitted or filed in opposition.

When no one answered the call, the court ordered the matter decided under Rule 78, without oral argument. Its written ruling was issued and final judgment entered in favor of defendant and against plaintiff. The reasons are fully explained in the ruling.

Later in that week the court received a letter from plaintiff's attorney to the effect that private arrangements had been made between the attorneys to adjourn the hearing to October 11, 1983. No word of this had ever been sent to the court, even informally, and no consent order or other order for adjournment had ever been requested,

submitted or approved. The letter itself was informal and not of record, and the court entered a memorandum treating it as a motion to alter or amend the judgment already entered, with argument set for October 11, 1983.

In support of his position, plaintiff filed an affidavit of plaintiff's wife, a "To Whom it May Concern" letter from a physician (neither sworn to nor certified in lieu of oath under the statute), a copy of the deposition of the purser on the flight, and another set of copies of the depositions of plaintiff and his wife, which were already in the record as part of defendant's moving papers.

As noted in the ruling, plaintiff's deposition testimony disclosed that he had developed a "hiatus hernia" a number of years before, that it occasionally "acted up" in an entirely unpredictable fashion, that he did not consult his physician before the flight on the subject, that he did not inform anyone connected with the airline about his latent condition, and that while he had been able to relieve his distress on occasions when the condition acted up, this had not been the case in June of the year before when his failure to relieve his distress had caused a hospitalization at Overlook Hospital to control some consequent internal bleeding.

None of this is denied in the opposing papers. In fact, the new affidavit of plaintiff's wife wholly ignores the experience of June of the year before as though it had never happened.

■ The "To Whom It May Concern" letter cannot be considered because it is not under oath or certified in lieu of oath. Even absent this defect, it would not serve to raise a genuine issue of material fact. The physician is not identified as a physician consulted for diagnosis or treatment and so the "history" recited would not be acceptable for consideration under Fed.Ev. Rule 803(4). The history he recites is not shown to have been provided by the plaintiff, and it significantly omits any reference to the hospitalization at Overlook Hospital. Thus, the opinion given, if relevant

at all, would not be admissible because the facts it assumes are at odds with plaintiff's own sworn testimony. There is no effort to provide data from the regular physician, from the records at Overlook, or from the physician and hospital in New York where the later corrective surgery was performed.

Similarly, the deposition testimony of the purser discloses no genuine issue of material fact. Nothing in it so much as remotely suggests the occurrence on the flight of any event that could rationally be regarded as an "accident" from which plaintiff's claimed injury resulted. At the end of that transcript there are some sheets of what appear to be basic first aid instructions in case of vomiting. Not only is there no reference in the transcript to identify that document, but on its face it cautions against allowing a person so afflicted to lie down on his back.

Had all these materials been submitted in time for consideration before the court ruled on the motion, they would have failed to raise a genuine issue of material fact since they provide no fact basis on which a finding of an "accident" could be predicated.

Finally, plaintiff argues in the brief that defendant cannot claim application of the Warsaw Convention because the notice printed, as it appears on the coupon, is in less than 10 point type. In response, defendant observes that the coupon is only part of the entire ticket, and that on the airline ticket itself the notice is printed in 10 point type. At argument, plaintiff could not say that he had evidence to show that the notice on the ticket itself was in less than 10 point type.

## ORDER

For the reasons stated above, it is on this 11th day of October, 1983 ORDERED that plaintiff's motion to alter or amend the judgment be and the same hereby is denied.